F. Lenward COFER, Petitioner–Respondent,

v.

Mary Donna PRICE–COFER, Respondent–Appellant.

No. 17533.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 27, 1992.

Ben K. Upp, Springfield, for respondent-appellant.

Thomas D. Dwyer, Springfield, for petitioner-respondent.

SHRUM, Presiding Judge.

In this dissolution of marriage case, the wife, Mary Donna Price–Cofer, appeals from the trial court's division of marital property. Specifically, she complains that the trial court erred because it failed to include as marital property post-separation expenditures of $18,300 made by the husband, F. Lenward Cofer, and that the court awarded too large a portion of marital assets to the husband. We affirm.

## FACTS

The parties were married July 22, 1980, and separated in 1989. No children were born of the marriage; from prior marriages, the husband had children and the wife a daughter.

Throughout the marriage and as of the date of the trial, the husband, who holds a master's degree in business administration, was an officer for a Springfield bank. From the date of the marriage until 1986, the wife, who has a Ph.D. in political science, was on the faculty of Southwest Missouri State University (SMSU). She resigned that position in May 1986 after she received an offer to join the faculty of a university in California. However, an illness prevented her from taking the California teaching position.

After treatment of the wife's illness, the parties agreed the wife should obtain a law degree. She entered law school in Kansas City, Missouri, in August 1987 and graduated in May 1990. Her education-related costs and living expenses were paid from several sources. After she became ill, she received a $13,000 disability benefit from SMSU. Some of that benefit was used to pay medical expenses, but, as the wife testified, "essentially it was used for my first two semesters of law school to cover tuition, books, and my living expenses in Kansas City." Contributions from savings and the husband's earnings accounted for at least $25,400 [1], most of which was transferred by the husband to the wife in monthly installments of $500 to $650. The husband also paid the wife's medical, pharmacy, and automotive expenses.

In December 1989, the husband ceased making monthly payments to the wife. To meet educational and living expenses until

---

**1.** *The husband* testified he had canceled checks to support the $25,400 figure. He estimated the total expenditure from savings and his earnings to be $29,000.

her current employment began in August 1990, the wife borrowed $1000 on a short-term basis and then withdrew the $14,000 that had accrued in her state retirement account. As of the March 1991 date of trial, the wife held a two-year appointment as a law clerk to a federal magistrate in Kansas City, Kansas. She was paid between $29,000 and $30,000 for the initial year, and she anticipated an annual increase of $800 to $1000 for the second year of her clerkship. As of the date of trial, she was not licensed to practice law.

A chief issue—at trial and on appeal—concerns the husband's expenditure of $18,-300. The expenditures occurred after the parties separated in November 1989 and after the husband filed his dissolution petition in December 1989. Following these two events, the husband consolidated several bank accounts (some in joint names and some individually-titled) into two accounts [2], one of which contained funds he considered to be his separate property. He deposited his monthly paychecks into the "separate property" account. As of May 1990, the total of the balances of the two consolidated accounts was $26,000; as of the date of trial, the individual balances in the two accounts were $8,502 and $679.

The husband acknowledged at trial that he had "expended certain funds over and above ... normal, everyday living expenses...." He accounted for the reduction in the consolidated account balances with testimony about the following: $5000 for a Dodge pickup truck; $1500 for vehicle repairs; $2000 for personal medical expenses; $5000 for attorney fees incurred in the dissolution action [3]; $3000 for clothing, $4000 for vacations; $1000 for miscellaneous gifts; and $5300 as a gift to a friend who had developed a serious health problem and had been out of work. The husband testified all these expenditures came from the account that contained what he considered marital funds.

The husband admitted that, after he consolidated the bank accounts, he transferred $18,000 to his brother who was to transfer the money to their mother to repay a debt owed the mother by the husband. The brother refused to transfer the money to the mother and returned it to the husband who redeposited the sum into one or both of the consolidated accounts. As of the date of trial, the husband had not repaid the debt to his mother. He did not list her as a creditor on his schedule of assets and liabilities; however, he testified that he still owed her $18,000. After the failed attempt to transfer $18,000 to his mother, the husband made the challenged expenditures.

Evidence concerning the extent of the parties' respective contributions to the marital property is incomplete. The husband purchased the residence in July 1974; after he and the wife married in July 1980, he conveyed it to the wife and himself. There is no evidence in the record about the value of the residence as of July 1980 or the husband's equity in it. There was no testimony to directly establish the existence of a mortgage loan on the property in July 1980; there was testimony that the wife had made no contributions "to the payments of the loan payment or other house expenses since 1986...." It is undisputed that both parties contributed to improvements in the residence—a new roof, a privacy fence, and interior redecorating—but neither assigned a value to those improvements.

The husband testified he owned household goods worth $3000 in July 1980 and that the parties had added household goods of $1000 value since July 1980. The wife testified the husband's household goods contribution was $1000 and that since July 1980 they had acquired additional household goods worth $3000. The husband had $10,000 cash as of July 1980.

The husband's total annual income is unknown to us. At trial, he testified his current income included $1000 a year in interest, $1200 a year for a newspaper column he wrote (less estimated annual ex-

---

2. The husband opened a nominal third account in which he maintained a balance of $1.

3. Subsequently, the husband testified he had not paid his attorney "in excess of $2500" for his representation in the dissolution action.

penses of $100 to $200), and $100 a month in payments on a note apparently secured by real estate the parties had sold. There was no testimony about the husband's income from his bank employment; the trial exhibit containing that information is not a part of the record on appeal.

With one relatively inconsequential exception[4], the trial court determined that all the parties' property was marital because it was "commingled in a fashion that the Court is unable to identify other Non–Marital property of either party." Neither party challenges the trial court's marital and nonmarital property designations.

The court awarded the wife marital property valued at $14,700 ($11,500 cash to be paid by husband to wife; $3000 equity in an Eagle Talon vehicle; $200 cash on hand) plus property about which there was no evidence concerning value: her clothing, personal effects, books, and antiques. The balance of the marital property, including the residence, was distributed to the husband. Debts secured by property were ordered to be paid by the party awarded the property ($9100 on the residence and $16,000 on the Eagle Talon).

In its decree, the trial court did not assign values to the marital property. However, in a letter[5], which accompanied copies of the decree, the court explained its reasoning to the attorneys. Portions of the letter follow:

Most of the values of the various items of marital property were agreed or not in dispute. The Court set the value of the real estate at $51,000.00. In its calculations, the Court determined that the marital assets had a total net value of $82,500.00[6].

The Court determines that the contribution of [the husband] to the property greatly exceeded the contribution of [the wife]. Some of the property was brought into the marriage by him and he continued to be employed while [the wife] was unemployed and at school. In addition, [the wife] used marital assets to gain her Law Degree, which qualified her for her present employment.

The Court believes that the distribution of marital property is fair and just.

We note that neither party requested the trial court to make findings of fact. *See* Rule 73.01(a)(2).

## STANDARD OF REVIEW

The scope of our review is set out in Rule 73.01(c) as interpreted in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). We will affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32; *Mehra v. Mehra,* 819 S.W.2d 351, 353 (Mo. banc 1991). The phrase "weight of the evidence" means its weight in probative value, not the quantity or amount of evidence. The weight of the evidence is not determined by mathematics; it depends on its effect in inducing belief. *Johnson v. Gregg,* 807 S.W.2d 680, 685 (Mo.App.1991). We defer to the trial court's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the decree, disregarding all contrary evidence and inferences. *Meh-*

---

**4.** The trial court found that one-third of the husband's $1000 "retirement benefit" was his separate property.

**5.** The letter is included in the legal file portion of the record on appeal. There is no notation on the letter to indicate that a copy was sent to the circuit clerk nor does the copy in the legal file bear a circuit court filing stamp. We cannot search the docket sheet for a reference to the letter because the docket sheet has not been included in the legal file. We question, therefore, whether the letter is properly a part of the legal file. However, we set forth pertinent portions of the letter because the wife refers to it to

support her arguments and the husband does not object to its presence in the legal file.

**6.** The parties appear to agree that the gross value of the marital estate was $101,208.66 and the net value $76,108.66. The discrepancy between the $76,108.66 figure and the $82,500 figure stated by the trial court is not germane to the issue, raised in the wife's first point on appeal, of whether the husband dissipated $18,300. The difference in the two net values assigned to the marital property likewise has no bearing on our disposition of the wife's second point on appeal.

*ra*, 819 S.W.2d at 353. The party challenging the decree bears the burden of demonstrating error. *Calia v. Calia*, 624 S.W.2d 870, 872 (Mo.App.1981).

## POINT I: DISSIPATION OF MARITAL ASSETS

■ In point I the wife challenges the division of marital property on the grounds that valuation of the marital property is "against the weight of the evidence in that the trial court failed to include as marital property sums of money dissipated by husband after separation and prior to the trial." The wife concedes that the husband's purchase of a truck ($5000), his expenditures for vehicle repairs ($1500), and his medical expenses ($2000) "are arguably justified as necessary expenses incurred by Husband. The balance of the expenditures, $18,300.00, cannot be so justified."

As the wife correctly points out, a trial court may order reimbursement of squandered or secreted marital property or include such assets as part of the marital property. However, the court opinions cited by the wife [7], and other opinions that apply the same principle, do not compel a trial court to take the action the wife now urges. *See Mistler v. Mistler*, 816 S.W.2d 241, 253 (Mo.App.1991).

Moreover, in three of the cases relied on by the wife, the court of appeals affirmed trial court decrees that either ordered one party to reimburse squandered assets or that awarded the depleted asset to the squandering party. In *S.L.J.* and *Hogrebe*, the courts examined the records and concluded there was "sufficient evidence" (*S.L.J.*, 778 S.W.2d at 244–45) and "substantial evidence" (*Hogrebe*, 727 S.W.2d at 197) to support the trial court's conclusions that the respective appellants had dissipated assets. It is clear from reading *Calia* that the court of appeals concluded the evidence in the record supported a finding

that the appellant had secreted or squandered marital property. 624 S.W.2d at 872. In the case before us, there was no finding, explicit or implicit, of dissipation. Thus *S.L.J.*, *Hogrebe*, and *Calia* do not aid the wife.

The case before us is procedurally more nearly like *Doyle*, a case in which the appellant husband challenged the property division on the grounds that the trial court failed to include as marital property approximately $10,000 which the wife claimed she had used "for living expenses." 786 S.W.2d at 622. This court reviewed the record, concluded there was no substantial evidence of squandering on the part of the wife, and affirmed the judgment. *Id.* In the case now before us, the wife appears to argue that *Doyle* mandates reversal if there is evidence in the record of the husband's dissipation of assets. This argument is without merit.

First, the argument requires us to weigh evidence where we should not. The husband gave an itemized accounting of the $18,300 depletion, and, with the exception of the dispute over the amount of the attorney fees, the wife does not challenge the explanation of *where* the money went [8]. The wife makes no argument to support her claim that the clothing and vacation expenditures constituted dissipation. And there is no evidence that the gift recipients were to repay the money to the husband; indeed, the husband testified they were not to repay him. The trial court was free to believe the husband's testimony. *Mehra*, 819 S.W.2d at 353. We find no authority for the proposition that the expenditures were, as a matter of law, improper.

The wife's evidence that the expenditures constituted dissipation consists of testimony that the expenditures were not authorized by her, were not made on her behalf, and that they occurred after the husband's attempt to transfer $18,000 to

7. The wife relies on *Doyle v. Doyle*, 786 S.W.2d 620 (Mo.App.1990); *S.L.J. v. R.J.*, 778 S.W.2d 239 (Mo.App.1989); *Hogrebe v. Hogrebe*, 727 S.W.2d 193 (Mo.App.1987); and *Calia*, 624 S.W.2d 870.

8. An award of attorney fees in a dissolution action is a matter for the discretion of the trial court. *Mistler*, 816 S.W.2d at 256. Moreover, the wife develops no argument to show that the difference between the apparently erroneous $5000 figure and the subsequently established $2500 fee was dissipated.

his mother. Thus, the wife argues, a "scheme to reduce the value of the marital estate" is inferable.

If we assume that the wife is correct in her assertion that there is evidence in the record that the husband dissipated marital assets, she does not necessarily prevail. For, as stated, there also is evidence to support a trial court conclusion that no squandering or secretion occurred. In such a situation, we will not interfere with the trial court's responsibility to weigh the probative value of the evidence. *Mehra,* 819 S.W.2d at 356; *Gregg,* 807 S.W.2d at 685.

■ The wife's apparent reliance on *Doyle* has a second shortcoming. The argument ignores the above-noted teaching of numerous cases that a finding of secretion or squandering does not compel a trial court to order some form of reimbursement. *See, e.g., Mistler,* 816 S.W.2d at 253 [12]. Had the trial court found dissipation and failed to order reimbursement, our review would be limited to an inquiry into whether the court abused its discretion. *Id.*

## POINT II: DIVISION OF MARITAL ASSETS

In point II the wife contends the marital property distribution, which she describes as "unduly weighted in favor of husband," is erroneous because "the trial court placed too great an emphasis on husband's financial contribution to the accumulation of the assets" and "the trial court failed to adequately consider other relevant factors set forth in [§ 452.330.1, RSMo Cum.Supp. 1991]" [9].

■ The Dissolution of Marriage Act (§§ 452.300, *et seq.,* RSMo 1986 and Cum.

Supp.1991) consigns the division of marital property to the sound discretion of the trial court. *In Re Marriage of Gourley,* 811 S.W.2d 13, 15 (Mo.App.1991) (citing *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 64 (Mo. banc 1983)). This court must defer to the trial court's marital property division unless the division is improper under the principles of *Murphy v. Carron,* 536 S.W.2d at 32, or an abuse of discretion is shown. *Gourley,* 811 S.W.2d at 15. We presume the correctness of the division of marital property; on appeal, the party challenging the division has the burden of overcoming the presumption. *Bixler v. Bixler,* 810 S.W.2d 95, 100 (Mo.App.1991).

■ A trial court's division of marital property does not have to be equal; it must be fair and equitable and take into account the factors enumerated in § 452.330.1. *Mistler,* 816 S.W.2d at 252 [8]. Disparity in the value of marital property awarded each spouse is appropriate if the relevant factors, statutory or otherwise, justify an unequal division. *Id.* at 252 [10]. The § 452.330.1 factors do not constitute an exclusive list for the trial court's consideration. *Id.* at 252 [9]. The fact that the trial court awarded one party a considerably higher percentage of the marital property than it awarded the other is not *per se* an abuse of discretion. *Hayes v. Hayes,* 792 S.W.2d 428, 431 (Mo.App.1990).

The wife sets out three pairs of percentages that she says can be used to describe the marital property distribution. Using the $76,108.66 marital property valuation—a figure the wife says is supported by the record if the disputed $18,300 is omitted—the wife received 19% of the marital property and the husband 81%. If the $18,300 is marital, then the wife received 15.5% and

---

**9. 452.330. Disposition of property, factors to be considered**

   1. In a proceeding for dissolution of the marriage ... the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

   (1) The economic circumstances of each spouse at the time the division of property is to become effective ...

   (2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

   (3) The value of the nonmarital property set apart to each spouse;

   (4) The conduct of the parties during the marriage; and

   (5) Custodial arrangements for minor children....

the husband 84.5%. Using the $82,500 marital property valuation figure that appears in the trial court's letter, the wife received 17.8% and the husband 82.2%.[10]

■ The wife contends that, irrespective of which pair of percentages is more nearly accurate, the court abused its discretion in its application of the statutory factors. The wife argues that the trial court placed too much emphasis on one factor, the contribution of each spouse to the acquisition of marital property (§ 452.330.1(2)), and neglected to give adequate consideration to the remaining factors of § 452.330.1.

■ There is no formula respecting the weight a trial court should give the relevant factors. *In Re Marriage of Harrison,* 657 S.W.2d 366, 370 (Mo.App.1983). As a reviewing court, we assume that the trial court considered all the evidence when it divided the marital property. *S.L.J.,* 778 S.W.2d at 244.

Two of the factors in § 452.330.1 may be disposed of summarily. The nonmarital property factor, § 452.330.1(3), is *de minimis;* the value of nonmarital property is only $333 (one-third of the husband's $1000 retirement account). The child custody factor, § 452.330.1(5), is irrelevant to the facts of this case.

■ We turn to the economic circumstances of each spouse at the time the division of property was to become effective. In support of her argument that the trial court neglected to consider this factor, the wife points out that, although each party has employment income[11], the husband received real property and furnishings where the wife did not, and the husband was apportioned less debt ($9100 on the residence) than was the wife ($16,000 on the Eagle Talon). In actuality, what the wife complains of in her argument is the actual property division; her argument does not support her assertion that the trial court failed to consider economic circum-

stances. The trial court had before it evidence of the parties' respective circumstances, including information about the husband's salary which we do not have. And the letter to the parties' attorneys, by its reference to the wife's law degree and her present employment, indicates the court considered her economic circumstances. The statutory factor "economic circumstances" is broad enough to include a party's capacity to work and earn. *Mistler,* 816 S.W.2d at 252; *Harrison,* 657 S.W.2d at 370. Although the "economic circumstances" in *Mistler* and *Harrison* involved the diminished capacity of a party to work and earn, it is no less an "economic circumstance" that a party has an enhanced capacity to work and earn.

The contribution of each spouse to the acquisition of marital property (§ 452.330.-1(2)) is the factor the wife contends was given too much emphasis by the trial court. Additionally, she argues the court was wrong in its determination of the parties' respective contributions. The wife's argument is essentially two-fold: (1) "the record wholly fails to establish the extent of Husband's contributions to [marital] assets prior to the marriage" and (2) the property division "fails to consider significant evidence regarding [the wife's contributions during the marriage]."

Although the record is incomplete, it does reveal significant contributions by the husband as of July 1980 when the parties married. The husband contributed the family residence; as the wife correctly points out, the record is silent about the market value of the property and the amount of the husband's equity. Evidence about the value of household goods the husband contributed in July 1980 was in conflict, a matter for resolution by the trial court. The husband also contributed $10,-000 cash to the newly-created marital estate.

**10.** We have already rejected the wife's assertion that the value of the marital estate must be increased by $18,300. Our disposition does not require us to determine which of the remaining two pairs of percentages more accurately describes the actual property division.

**11.** Because the trial exhibit which reveals the husband's income from his bank employment is not a part of the record on appeal, we are unable to compare his income to the wife's.

The wife calls our attention to an abundance of evidence in the record concerning her contributions during the marriage to the acquisition of marital property. Again, the property division itself does not prove a failure by the court to consider the evidence. The trial court's letter makes clear the court did consider the wife's evidence of her contributions. The court stated its conclusion that the husband's contribution exceeded the wife's, a recognition that the wife contributed. The statement in the letter that the husband "continued to be employed while [the wife] was unemployed and at school" appears a recognition that the wife contributed financially to the marital estate prior to the date she began law school. The court had before it evidence of the wife's SMSU retirement account and disability benefits. By its statement in the letter that the wife "used marital assets to gain her Law Degree," the court appears to have recognized these assets as contributions by the wife to marital property.

The conduct of the parties is another factor the trial court must consider (§ 452.-330.1(4)). The wife points to the husband's expenditure of $18,300 during the separation period as evidence of misconduct which was disregarded by the trial court. As discussed under point I, there was evidence from which the trial court could have concluded the husband was not guilty of misconduct in his use of the $18,300. The court's apparent failure to require some form of reimbursement by the husband does not compel the conclusion that the trial court did not consider the statutory misconduct factor [12].

The wife's argument, that the trial court overemphasized one statutory factor while failing to consider others, has no merit. There was evidence before the trial court that pertained to the three statutory factors relevant to this case. We presume the trial court considered the evidence, *see S.L.J.*, 778 S.W.2d at 244, and the record supports the conclusion that the trial court did so. We find no abuse of discretion by the trial court in its division of the marital property.

We affirm the judgment of the trial court.

FLANIGAN, C.J., and MAUS, J., concur.

---

**12.** The wife's reliance on *In Re Marriage of Usrey,* 781 S.W.2d 556 (Mo.App.1989), is misplaced. In *Usrey,* this court held that the trial court, having found the husband was guilty of misconduct, abused its discretion in its division of marital property. There is nothing in the record before us that indicates the trial court found the husband had engaged in misconduct.