**Jon Everett JENSEN, Appellant,**

v.

**Cynthia Jayne JENSEN, Respondent.**

**No. 63828.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 26, 1994.

Rehearing Denied June 6, 1994.

John C. Garavaglia, Raskas, Ruthmeyer, Pomerantz, Wynne, Garavaglia & Susman, St. Louis, for appellant.

Mary Ann Weems, Corrine R. Coston, Law Offices of Mary Ann Weems, Clayton, for respondent.

SMITH, Judge.

Jon Jensen (husband) appeals from a decree of dissolution of marriage from Cynthia Jensen (wife) alleging the trial court erred in its division of marital property and in imputing income to husband for purposes of determining his child support and maintenance obligations and liability for wife's attorney's fees. We affirm in part and reverse in part.

Husband and wife were married in October 1983 and separated in December 1990. Both had previously been married. Husband had two children from a former marriage. Husband also was the father of a child born to a woman with whom he had a relationship during his marriage to wife. There were also two children born of the present marriage.

During the marriage, husband was employed by Cap Gemini and eventually became a Regional Vice President earning in excess of $100,000 per year. In May 1990, husband was terminated by Cap Gemini in what appears to have been a reduction in personnel by that company. Within two months of husband's termination, several other Regional Vice Presidents lost their jobs as well.

Following this termination, husband and wife discussed the possibility of husband going into business with a former co-worker at Cap Gemini, Virginia Young. The business would essentially perform the same functions as Cap Gemini, placing data processing professionals with organizations in need of such services.

Wife was aware that starting such an endeavor would entail a large investment and would produce little return while in the early stages of its operation. However, both husband and wife agreed husband should begin this business. Husband and Young began InTeCon in July of 1990, prior to the separation of husband and wife.

Due to the initial lack of business at InTe-Con, husband and wife were forced to meet living expenses and make loans to the business by using their savings and other investments. Beginning in August, 1991, husband was to receive $800 every two weeks as a salary from InTeCon. However, husband was not paid if InTeCon did not have enough money to pay him. This same arrangement existed for Young as well. She testified she eventually left InTeCon in September 1991 because she was not making any money. In fact, Young received no income from InTe-Con in either 1990 or 1991 as evidenced by her W–2 forms for those years. Husband fared slightly better. His income from InTe-Con for 1991 was $14,703.28. In his brief, husband estimated his yearly income from InTeCon to be $26,000.

After the separation of husband and wife, a Pendente Lite (PDL) Order was issued on February 6, 1991. The important aspect of that Order for our purposes is that husband was allowed to expend marital assets in order to: 1) pay child support to his first wife, make support payments to the woman with whom he had a child during his marriage to wife, and to pay child support to wife; 2) make additional loans to InTeCon; and 3) meet his living expenses.

The dissolution proceedings took place in a series of hearings between August 17, 1992 and January 11, 1993. During the proceeding, wife offered the testimony of Young to show the earning potential of husband. Young testified, over objection, that it was her belief husband could find employment with a company earning approximately $80,-000 per year. Also at trial, husband gave testimony attempting to show that a coin collection was his separate property.

The Decree of Dissolution was entered on January 26, 1993. In its division of marital property, the trial court, after determining the coin collection to be marital property, awarded to husband several of the marital assets he had already depleted. The trial court also awarded a $25,000 lump sum payment to wife. Husband claims the trial court erred in: 1) allocating to him marital assets already depleted; 2) awarding the $25,000

lump sum payment to wife; and 3) determining the coin collection to be marital property.

Further, the trial court imputed income to husband in the amount of $6,000 per month because "[husband] ha[d] intentionally placed himself in a position where he [was] earning less than he ha[d] in the past and less than he could earn if he sought employment in his field". The trial court then used this imputed income to calculate the overall child support and husband's proportional responsibility thereof and wife's maintenance. Husband claims the trial court erred in imputing this income to him.

■ Because this action was tried to the court, we will uphold the trial court's decision unless: 1) there is no substantial evidence to support it; 2) it is against the weight of the evidence; or 3) it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) [1–3].

Husband contends the trial court erred in its division of property. He specifically alleges that: 1) wife knowingly and voluntarily participated in the liquidation of, received and accepted portions of, and obtained the benefit of, marital funds and assets applied pursuant to the PDL Order for living expenses and other marital obligations, and, therefore, was estopped to claim these funds and assets should have been set apart to husband; and 2) the $25,000 lump sum payment from husband to wife creates an unjust division of property.

■ The factors relevant to the division of marital assets are set out at § 452.330.1 RSMo Cum.Supp.1991. This statute places the division of marital property in the sound discretion of the trial court. *Cofer v. Price–Cofer*, 825 S.W.2d 369 (Mo.App.1992) [3]. We, therefore, must defer to the trial court's marital property division unless such division exhibits an abuse of discretion or is improper under the standard set out in *Murphy v. Carron. Id.* In reviewing a division of property, we presume the trial court's division to be correct, and the party challenging the division scheme must bear the burden of overcoming this presumption. *Id.*

Husband first alleges that, in essence, the trial court's division of property improperly

awarded him principally sums of money already expended. The decree provided:

> All of the accounts, securities and funds liquidated by [husband], including the money market accounts, savings accounts, checking accounts, 401–K funds, International Investor's Fund IRA, Century Life IRA, U.S. Treasury Securities, college funds, bonds and cash values of life insurance policies cashed in by [husband] are awarded to [husband]. [Husband] is further awarded the balance owing to him on the loans from InTeCon, and the InTeCon stock.

This, according to husband, actually leaves husband with a much smaller share than wife received. Further, husband argues that most of these liquidated funds were paid out to satisfy marital obligations pursuant to the PDL Order with wife's consent. Therefore, husband argues, wife should be estopped from claiming these funds should have been set aside to husband.

■ Husband's use of an estoppel principle in this instance is misplaced. Estoppel, in its basic form, applies to prevent litigants from taking a position in one judicial proceeding thereby obtaining benefits from that position in that instance and later, in a second proceeding, taking a contrary position in order to obtain benefits from such a contrary position at that time. *St. Louis Public Service Co. v. City of St. Louis,* 302 S.W.2d 875 (Mo. banc 1957) [1]; *Vorhof v. Vorhof,* 532 S.W.2d 830 (Mo.App.1975) [3–5]; *Medlicott v. Medlicott,* 617 S.W.2d 576 (Mo.App.1981) [2].

■ Husband presupposes all of the expenditures by husband allowed under the PDL Order were for marital obligations. However, payments for husband's living expenses as well as for child support to: 1) husband's ex-wife, 2) the woman husband had a child with during his marriage to wife, and 3) wife do not amount to marital obligations. The PDL Order also allowed husband to reduce marital assets for further loans to InTeCon.

Wife did not benefit by allowing husband to liquidate marital assets for payment of these "personal" obligations. It is difficult to conceive the benefit to wife from husband's liquidation of marital assets in order to pay his ex-lover support for the child the two conceived during his marriage to wife. Likewise, wife received no benefit from money expended to pay husband's obligation for child support to husband's ex-wife. The support provided for the children of the marriage similarly fulfilled an obligation of husband. The loans to the business were awarded to husband as his marital property and did not benefit wife. The trial court did not err in setting apart assets, some of which had already been liquidated, as a portion of husband's marital property award. They were marital assets utilized by husband to fulfill his obligations.

■ Husband further argues the trial court erred in granting a $25,000 lump sum award to wife because such a payment creates an unjust division of property. In his brief, husband admits the division of assets without the lump sum payment would have been essentially equal. We agree with husband that adding a $25,000 payment to an already equal division gives wife somewhat more than half. However, "[a] trial court's division of property *does not have to be equal;* it must be fair and equitable and take into account the factors enumerated in § 452.330.1". *Cofer,* 825 S.W.2d at [4–6] (emphasis added). If the relative factors in § 452.330.1 justify other than an equal division, a disparity in the value of marital property awarded to each spouse is appropriate. *Id.*

■ Under the factors listed in § 452.330.1: 1) wife was given custody of the couple's children (§ 452.330.1(5)); 2) wife had foregone a career outside the home in order to care for the couple's children and would need to continue in her "at-home" consulting business, in which she earns less than she did while working outside the home, while continuing to care for the children (§§ 452.330.1(2) & (3)); and 3) the husband was guilty of serious misconduct (§ 452.330.1(4)). While the existence of separate property is negligible in this case and the factors listed in § 452.330.1 are not all inclusive of the factors a trial court may consider, *Cofer,* 825 S.W.2d at [4–6], the trial court was well within the discretion afforded it in determining wife

should receive the $25,000 lump sum payment.

▮▮ Husband next contends the trial court erred in determining a coin collection to be marital property subject to division. Generally, property acquired by either spouse prior to marriage is that spouse's separate property upon dissolution. *Mika v. Mika,* 728 S.W.2d 280 (Mo.App.1987) [1]. However, § 452.330.2 creates a presumption that property acquired after the marriage is marital property. *Id.* Husband, as the party claiming the collection to be his separate property, bears the burden of proving the coins were his prior to the marriage. *Id.*

▮▮ The only evidence put forward by the husband at trial as to who owned the coins and when they were acquired is as follows:

Question: Whose coins are they?

[Husband]: Mine.

Question: When did you acquire them?

[Husband]: I don't remember.

Question: Did you have them before you were married to [wife]?

[Husband]: Which coins are you talking about?

Question: I don't know. I am just looking at—it says 'Coins—$2,000.00'?

[Husband]: There are some coins in a collection that my father gave me before we got married.

This exchange can best be classified as ambiguous. The trial court could have concluded husband did not carry his burden of showing which of the coins were acquired by him prior to his marriage to wife. Therefore, the trial court did not erroneously determine the coins to be marital property subject to division.

▮▮ Finally, husband contends the trial court erred in imputing income to him in the amount of $6,000 per month. A spouse may not escape responsibility to his or her family by deliberately limiting his or her work to reduce income. *Hogrebe v. Hogrebe,* 727 S.W.2d 193 (Mo.App.1987) [3]. In order to avoid such a situation, a court may, *in proper circumstances,* impute an income to a spouse according to what that spouse could earn by

use of his or her best efforts to gain employment suitable to that spouse's capabilities. *Id.* at [2] (emphasis added). This measure applies particularly where a spouse has *voluntarily* reduced his or her income. *Id.* at [3] (emphasis added).

▮▮ The most common scenario in which income is imputed to a spouse is where that spouse has deliberately quit work in order to reduce his or her child support and/or maintenance obligation. *See Fugate v. Fugate,* 510 S.W.2d 705 (Mo.App.1974). Imputation of income has also been used where the spouse attempts to inaccurately show future income will be lower than in the past as through his control and manipulation of a close corporation. *See Henderson v. Henderson,* 822 S.W.2d 474 (Mo.App.1991). That situation should more accurately be termed "attribution of income." The principle has also been extended to apply in situations where the spouse lost his or her job involuntarily but did not in good faith attempt to obtain new employment, *see Foster v. Foster,* 537 S.W.2d 833 (Mo.App.1976), or refused to accept employment offers which were received, *see Wynn v. Wynn,* 738 S.W.2d 915 (Mo.App.1987). Even where a spouse has, with the permission and agreement of the other spouse prior to separation, voluntarily foregone employment in order to attend school, courts have imputed some income to the student-spouse. *See Boyer v. Boyer,* 567 S.W.2d 749 (Mo.App.1978).

▮▮ In its Decree of Dissolution, the trial court determined that husband had "intentionally placed himself in a position where he is earning less than he has earned in the past and less than he could earn if he sought employment in his field". While a court could properly impute income to a spouse after such a finding, we conclude the present record does not warrant the finding that the husband intentionally placed himself in a position outside his field in order to reduce his income. He is working in his field. Therefore, the trial court's determination that an income of $6,000 per month should be imputed to husband is erroneous.

Husband did not voluntarily reduce his income. He was terminated by Cap Gemini.

After his termination, husband did spend time, although it was a short time, looking for work. However, he received no offers. Husband and wife decided husband should begin InTeCon, a business which would compete in the same field as husband's old employer. It was contemplated by both husband and wife that InTeCon would not be profitable for several years. Therefore, when husband began InTeCon, he obtained a job in the field of his expertise.

We can find no Missouri case where income has been imputed to a spouse in the situation presented here. Husband, with the agreement of wife, started a new business within his area of experience. Both realized profitability would lie in the future as is true with most small businesses. Before separation of the parties capital was put into the business from marital assets and after separation additional capital went to the business from those assets. Husband's income from the business has increased. The major marital asset still in existence awarded to husband is the stock in and the loans to the business. The trial court's imputation of an income three times higher than husband's actual earnings could force him to abandon the business, forfeit the marital assets he received and seek employment elsewhere to meet the awards premised on income he does not receive.

■ A series of cases, predating the dissolution law, but which are still sound, have held that an award of child support should not be so great as to destroy the incentive of the father or impair his position. *Mortensen v. Mortensen*, 469 S.W.2d 852 (Mo.App.1971) [4, 5]; *Rodgers v. Rodgers*, 505 S.W.2d 138 (Mo.App.1974) [13]; and *C.E.McM. v. A.V.McM.*, 506 S.W.2d 14 (Mo.App.1974) [5]. Courts do not interfere within the marital relationship to compel spouses to obtain employment which will generate the maximum possible income to support their children. Courts do not interfere within the marital relationship to mandate the employment which a spouse is required to take. We can perceive no reason why courts should be allowed to assume such a role in the dissolution process where the record does not establish an attempt to evade parental responsibilities.

The record does not reflect that father here is attempting to evade his obligations to support his children. It supports a conclusion that he is attempting to establish his own business to support his family as many people in our society do. The trial court erred under the circumstances of this case in imputing to the husband the level of income which he could possibly meet only by abandoning his fledgling business and his investment therein. We remand the matter to the trial court to redetermine the child support, maintenance and attorney's fees on the basis of husband's income as determined by the court. In so doing the trial court may consider any evidence wife may present that in fact husband's income from InTeCon, a close corporation, is different from that shown by husband's evidence, or is less than husband is capable of earning from InTeCon.

Husband alleges the trial court erred in overruling his objection to and in failing to strike testimony by Virginia Young that husband could obtain employment at or near a salary of $80,000 per year. In view of our holding concerning imputation of income to husband we need not reach this issue.

Award of child support, maintenance and attorney's fees is remanded for further proceedings in accord with this opinion; in all other respects the judgment is affirmed.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

GRIMM, P.J., and AHRENS, J., concur.