Janice TATE, Respondent/Cross–Appellant,

. v.

Edward F. TATE, Appellant/Cross–Respondent.

Nos. 67355, 67420.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 5, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 11, 1996.

John Longos, Wiseman, Shaikewitz, McGivern, Wahl, Flavin, Hesi & Mormino, P.C., St. Louis, for Appellant.

Aaron S. Dubin, Vines, Frankel Rubin, Bond & Dubin, P.C., Clayton, for Respondent.

CRANDALL, Judge.

Husband, Edward F. Tate, appeals from the decree of dissolution of his marriage to wife, Janice Tate. Wife cross-appeals. We affirm.

Review of this case is governed by the principles of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). On appeal, we do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party and disregard contradictory evidence. *Riaz v. Riaz*, 789 S.W.2d 224, 225 (Mo.App.1990).

Husband and wife were married in July 1979. The parties separated in November 1989. Two children were born of the marriage: a son born in 1981 and a daughter born in 1983. Husband had another child by a woman with whom he was living at the time of the dissolution.

Husband was a dentist. At the time of the dissolution, he was earning over $8,000.00 per month from his dental practice. He also had rental income of $1,400.00 per month from one unit of a duplex, the other side of which served as his residence. He estimated his monthly expenses at almost $11,000.00.

Wife was a high school graduate and had not worked outside the home during the marriage. She was about 41 years of age at the time of the dissolution. After the parties separated, she held several part-time jobs, including sales clerk, waitress, and receptionist. At the time of the dissolution, she was unemployed but was starting a part-time job answering the telephone. She was scheduled to work three days per week for a salary of about $5.00 per hour. Wife admitted that she had never looked for a full-time job since the separation and wanted a job which did not interfere with the children's schedules. Wife's income and expense statement listed the monthly expenses for her and the children at $6,042.00 per month.

In June 1990, husband and wife sold the marital residence. After paying off first and second mortgages and a loan incurred for credit card debts of $44,490.11, they divided the proceeds. They each received $150,-000.00 and placed about $22,000.00 in an escrow account. Wife spent $100,000.00 to purchase a home in St. Charles County and used the remaining $50,000.00 over a period of time to cover expenses for her and the children. Husband used $150,000.00 to purchase the duplex in which he lived. Funds in the escrow account were expended for son's tuition at a private school for children with learning disabilities and for son's counseling.

The court set apart the separate property to each party: to wife a 4.27 carat diamond ring; and to husband 250 shares of stock in Tate–Kamakis & Associates, Inc. (dental practice), a 1976 Cadillac, and a bank account funded with the proceeds from the sale of his deceased mother's house. The court divided the marital property as follows:

TO WIFE

| | |
|---|---|
| St. Charles County house | $100,000.00 |
| Promissory note from dental practice | 63,177.40 |
| Real Estate Fund | 9,500.00 |
| IRA | 7,115.60 |
| IRA | 8,130.45 |
| IRA | 4,894.18 |
| IRA | 19,341.19 |
| Brokerage Ready Asset Acct. | 27.30 |
| Group Fund | 2,464.80 |
| Acct. in son's and husband's names | 2,852.95 |
| Brokerage Acct. | 47.21 |
| Brokerage Acct. | 2,214.00 |
| Cash payable from husband (one-half interest in leasing partnership) | 2,500.00 |
| Bank Acct. | 2,000.00 |
| Interest in Dental Building Partnership | 76,049.88 |
| TOTAL | $300,314.96 |

TO HUSBAND

| | |
|---|---|
| Clayton Duplex | $155,000.00 |
| Non-competition note to husband from other dentists | 50,000.00 |
| Brokerage Acct. | 18,805.64 |
| PEBSCO Acct. | 57,262.45 |
| Interest in dental practice's profit sharing plan | 15,098.00 |
| Leasing partnership (less payment of one-half interest to wife) | 2,500.00 |
| Bank Acct. | 2,900.00 |
| Brokerage Acct. | 23.00 |
| TOTAL | $301,589.09 |

The court awarded wife primary legal and physical custody of the children. Husband was ordered to pay a total of $1,488.00 per month in child support for both children, maintenance of $1,000.00 per month, and wife's attorney's fees in the amount of $13,-000.00. The court ordered husband to pay son's tuition at the private school for 1994–1995. The court made other orders pertaining to husband's providing the children with

medical coverage, paying their medical expenses, and paying their college expenses.

## HUSBAND'S APPEAL

In his first point, husband challenges the award of maintenance to wife. The court specifically found that wife was "without adequate means to support herself," while husband had "adequate means to support himself and to provide support to [w]ife." The court awarded her maintenance of $1,000.00 per month.

■ Section 452.335, RSMo (1994) governs spousal maintenance orders. Section 452.335.1 provides that a court may grant maintenance to a spouse only if it finds that the spouse seeking maintenance (1) lacks sufficient property, including marital property apportioned to the spouse, to provide for his or her reasonable needs; and (2) is unable to support himself or herself through appropriate employment. Section 452.335.2 sets forth the statutory factors the trial court must consider in awarding maintenance, including, but not limited to, the following: the financial resources of the party seeking maintenance and his ability to meet his needs independently; the comparative earning capacity of each spouse; and the duration of the marriage. The spouse seeking maintenance is required to show need before maintenance may be awarded. *L.A.L. v. L.L.*, 904 S.W.2d 50, 53 (Mo.App.E.D.1995). The trial court is vested with broad discretion in determining the amount of a maintenance award and the appellate court will not interfere unless it appears that the trial court abused that discretion. *Id.*

■ The first factor we consider is the comparative earning capacity of the parties. *See* § 452.335.2(3). Here, husband's earning capacity was substantially greater than wife's at the time of dissolution. Husband was a dentist who earned over $8,000.00 per month from his dental practice. Wife, on the other hand, was a high school graduate whose skills and work experience limited her earning potential to approximately $5.00 per hour.

■ Husband alleges that if wife applied herself, "she could be making anywhere from $10.50 to $13.50 an hour as a computer operator." The record does not support husband's assertion. Wife did not possess any marketable skill and did not even know how to type. Although wife had an affirmative duty to seek employment to enable her to become self-sufficient, *see Francis v. Francis*, 823 S.W.2d 36, 39 (Mo.App.1991), there was no indication in the record that her earning potential was going to improve in the near future. Any evidence regarding wife's future earning power was merely speculative at the time of dissolution.

■ The duration of the marriage is also a factor. *See* § 452.335.2(6). During the marriage, wife remained at home to care for the children. Additional significance attaches to the duration of the marriage where one spouse, while taking care of the home and rearing the children born of the marriage, forgoes development of his or her career and the attendant advances and salary increases which could reasonably be expected during that period of time; and where the other spouse is free to advance his or her career or business and to enjoy the benefits therefrom. *L.A.L.*, 904 S.W.2d at 54. The detrimental effect of wife's withdrawal from the job market to assume the duties of a homemaker was a sound basis for the court's award of maintenance. *See id.*

In addition, wife was unable to meet her needs independently. *See* § 452.335.2(1). Husband claims that, although wife listed her expenses as $6,042.00, her monthly expenses more closely approximated $2,554.00. The trial court was entitled to believe or disbelieve the testimony regarding wife's expenses and had broad discretion in determining the amount of maintenance. Further, wife's monthly income from a part-time job at a pay rate of $5.00 per hour, plus child support of $1,488.00 and maintenance of $1,000.00, fell considerably short of her listed expenses. There was substantial evidence that wife was not able to meet her needs independently. The trial court did not abuse its discretion in awarding wife maintenance. Husband's first point is denied.

In his second point, husband claims the trial court erred in awarding total child sup-

port for both children in the amount of $1,488.00. In his third point, he challenges the award of attorney's fees to wife. We have reviewed these points on appeal and find that they are supported by substantial evidence and are not against the weight of the evidence; no error of law appears. An opinion on these points would have no precedential value. Points two and three are denied pursuant to Rule 84.16(b).

In his fourth point, husband charges error in the trial court's division of the marital property and in its awarding certain property to each party as separate. He argues that, although the court professed its intention was "to set off the marital property into approximately equal shares," the division fashioned by the trial court was not equal. He raises several subpoints under this claim of error.

■■■ The factors relevant to the division of marital assets are set out in § 452.330.1, RSMo (1994). The statute places the division of marital property in the sound discretion of the trial court. *Jensen v. Jensen,* 877 S.W.2d 131, 134 (Mo.App.E.D.1994). We, therefore, defer to the trial court's marital property division unless such division exhibits an abuse of discretion or is improper under the standard of *Murphy v. Carron. Id.* In reviewing the trial court's division of property, we presume the trial court's division to be correct; and the party challenging the division scheme must bear the burden of overcoming this presumption. *Id.*

■■■ In his first subpoint, husband claims the trial court erred in failing to consider the $50,000.00 wife spent after receiving $150,-000.00 from the sale of the marital residence in 1990. He argues the court should have equalized the division of marital property by crediting wife's portion of the marital property with the $50,000.00 wife allegedly "dissipated."

Here, wife's testimony was that from 1990 to 1994, she spent $50,000.00 of the proceeds from the sale of the marital home for living expenses for herself and the children. The trial court was free to believe this testimony and to consider the funds as nonexistent at the time of trial. Wife's use of these funds to support herself and the children over a period of time did not constitute the dissipation of marital assets. The trial court did not err in failing to consider the $50,000.00 as part of wife's share of the marital property.

■■■ In his second subpoint, husband asserts the trial court erred in dividing the marital assets when it did not factor into the division of property husband's pre-dissolution payment of $44,868.04 in credit card debts. He posits that because the debts were allegedly incurred for family purposes, he should have been awarded one-half of that amount in the distribution of the marital assets and wife should have been held accountable for the other half.

The facts do not support husband's argument. The parties sold the marital residence after they separated and used $44,490.11 of the proceeds to pay off credit card debts which they had incurred up to that point in time. The $44,868.04 additional credit card debts accumulated after the parties separated and were paid by husband prior to dissolution. Husband's own testimony was that approximately $13,878.00 of the credit card debts were incurred as a result of his gambling on river boat casinos, which he characterized as expenses for "entertainment." In addition, husband was unable to identify which credit cards wife shared with him and to specify what amounts, if any, she charged on each card. The court did not err in refusing to hold wife accountable for one-half of the credit card debts paid by husband prior to the dissolution.

In his third subpoint, husband contends the trial court erred in valuing the notes awarded to the parties. He argues the court improperly valued both notes by using their 1990 values of $63,177.40 and $50,000.00, instead of their 1994 values. *See, e.g., In re Marriage of Gustin,* 861 S.W.2d 639 (Mo. App.W.D.1993) (stock which rose sharply in value between the date of valuation until the time of distribution must be valued at the time of distribution). He also contends the court erred in considering the non-competition note as marital property because the payments on that note were made directly to his dental practice.

■ We first address the non-competition agreement. That agreement was contained in an "Agreement for Purchase and Sale of Assets" entered into by husband and Nicholas Kamakas, the dentist with whom he was in practice, both designated as "Seller" in the contract; and three other dentists, all designated as "Buyer." The agreement provided in pertinent part:

1. *SALE OF ASSETS.* Seller agrees to sell to the Buyer for the sum of [$120,000.00] and Buyer agrees to purchase from Seller all of the Seller's rights, title and interest in said property and for the following assets:

1) Competitive covenant, later described, of five miles for five years;

a) With Edward F. Tate for [$50,000.00]

b) With Nicholas Kamakas for [$50,000.00]

c) All equipment, supplies, and leasehold improvements ... for [$15,000.00]

d) All patient records ... for [5,000.00]

There is no indication in the agreement that the payment for the non-compete agreement was to go to the dental practice, instead of going directly to husband for his personal covenant not to compete. The trial court did not err in determining the $50,000.00 note was marital property.

As to the value of both notes, on appeal both parties agree that the specific notes of $63,177.40 and $50,000.00 referred to in the decree of dissolution did not exist at the time of the property division. The parties differ, however, in their characterizations of the notes. Husband states that the notes were partially paid between 1990 and 1994; and that at the time of dissolution, the $63,177.40 note was worth $19,325.89 and the $50,000.00 note was worth $8,333.34. He wants the lower values to be used in dividing the marital assets. Wife argues that in view of husband's dissipation of the funds received in payment on the notes, it was proper for the court to value the notes as of 1990, rather than as of the time of distribution.

■ The court may include assets, some of which have already been liquidated, as part of the marital estate and set apart those assets to the parties. *See Jensen,* 877 S.W.2d at 136. Here, husband received payments on both notes from 1990 through 1994. He then used the funds for his own purposes and to his own benefit. Wife, in contrast, did not receive any of the funds and did not benefit from any of the expenditures by husband. Where husband dissipated the funds received in payment of the two notes, the court properly considered the full value of the notes as marital property and awarded the $63,177.40 and $50,000.00 notes to wife and to husband, respectively.

In addition, husband was not prejudiced by the trial court's failure to use the lower figures offered by husband. Use of the lower figures would have had little effect on the overall distribution of the marital assets.

■ Taking the nonexistence of the $63,177.40 note into consideration, wife requests this court to enter a judgment in that amount in her favor against husband. She failed, however, to raise this claim for relief in her cross-appeal. We therefore are precluded from entering judgment in her favor in that amount.

Husband's fourth subpoint relates to his PEBSCO account or his deferred compensation plan, valued at $57,262.45.

■ Husband first asserts the trial court erred in finding his PEBSCO account to be marital property in lieu of setting it aside to him as his separate property. His contention is without merit. Generally, all property acquired by either spouse subsequent to the marriage is deemed marital property. § 452.330.2, RSMo (1994). The trial court properly considered the PEBSCO account as marital property.

■ He also claims the trial court erred in considering the increase in value of the PEBSCO account after the parties separated as marital property. We disagree. The correct date for valuing property is generally the date of the dissolution. *Conaway v. Conaway,* 899 S.W.2d 574, 575 (Mo.App. W.D.1995). It was proper for the trial court to value the deferred compensation plan as of the date of dissolution, rather than the date

of separation. *See id.* (husband's pension plan must be calculated utilizing the total number of years the parties were married, not the date of separation, in arriving at wife's marital interest in husband's pension plan).

■ Husband's last claim of error regarding the PEBSCO account is the court failed to consider the tax consequences to husband when it awarded him the PEBSCO account, because the monies must be returned to his dental practice and may be taken by him as salary. The trial court may take tax consequences into consideration when dividing the marital assets. *Keller v. Keller,* 877 S.W.2d 192, 196 (Mo.App.E.D. 1994).

■ Husband, however, admitted that any tax consequences connected with his PEBSCO account were not absolute but were contingent on his taking the funds as salary. In his proposed property distribution, husband requested that the $57,262.45 PEBSCO account be set off to him as separate property; but if the court deemed the PEBSCO account as marital property, requested the court "to consider that he is not necessarily going to receive those monies from the corporation but assuming he does, in the form of wages or salary, he would be taxed at the rate of 31% by the federal government, 6% by the State of Missouri and 1.45% by medicare." He also testified as follows:

[Husband's counsel]: Do you know what the corporation intends to do with the . . . monies from PEBSCO?

[Husband]: I know that . . . our payroll is under-funded, . . . the pension—the profit sharing plan is way under-funded. So, I know the money will be used for those. And I think there's some payroll taxes that are due that we are going to use some of it for, also.

\* \* \* \* \* \*

[Husband's counsel]: And then these monies, they could also be spent—they could also be given to you as a bonus; is that right?

[Husband]: If there would be any . . . left I suppose.

Given husband's uncertainty at the time of dissolution about whether the money would be distributed to him in the form of salary, the court did not err in failing to consider the tax consequences of the award of the PEBSCO account to husband.

■ In his next subpoint, husband argues the court failed to set aside to him as his separate property the value of his separate funds used to purchase the marital residence; namely, $80,000.00 he received from the sale to Nicholas Kamakas of 150 shares of his dental practice which he owned prior to the marriage. After the marital residence was purchased, it was titled jointly in the names of husband and wife. Assuming that the $80,000.00 was husband's separate property prior to the marriage, once he placed separate property in the joint names of him and wife, it was deemed a gift to wife and was transmuted into marital property. *See Kettler v. Kettler,* 884 S.W.2d 729, 732 (Mo.App. E.D.1994). The source of the funds did not abolish this transmutation theory. *See id.* The court did not err in failing to find the $80,000.00 used to purchase the marital residence as husband's separate property.

■ In another subpoint, husband asserts the trial court erred in omitting from its order a designation of which party was entitled to claim the children as dependents for federal and state income tax purposes. We acknowledge the trial court has jurisdiction to allocate tax exemptions between the parties. *Hoffman v. Hoffman,* 870 S.W.2d 480, 484 (Mo.App.E.D.1994). The general rule, however, is that absent the written consent of the custodial parent or the existence of a multiple support obligation, the primary custodial parent is entitled to the income tax exemption for dependent children. 26 U.S.C.A. § 152(e); *id.* Here, the court did not determine in its decree which party was entitled to claim the children as dependents for income tax purposes, so that wife as the custodian of the children was entitled to claim the income tax exemption for the children. The trial court did not err in failing to designate which party was entitled to claim the children as dependents for income tax purposes.

In other subpoints, husband challenges the court's including in the marital assets a certain group fund and a bank account in his and son's names; the court's valuing and dividing the dental building partnership; and the court's setting aside to wife as her separate property the 4.27 carat diamond ring. We have reviewed these remaining subpoints under husband's point four and find they are supported by substantial evidence and are not against the weight of the evidence. No error of law appears. An opinion on these subpoints would have no precedential value. Rule 84.16(b).

Husband's fourth point is denied.

### WIFE'S CROSS–APPEAL

Wife raises six points in her cross-appeal. In the first three points, wife asserts the trial court erred in failing to enforce the pendente lite (PDL) order against husband for monies due wife under the PDL award: to wit, medical expenses for the children (Point I); one-half of the 1989 income tax refund to wife (Point II); and private school tuition for son (Point III).

■ An award pendente lite is in the nature of an independent cause of action. *Huska v. Huska,* 721 S.W.2d 120, 121 (Mo. App.1986). A pendente lite order is a final judgment on the merits of the motion from which an appeal may be taken; and if no appeal is taken, upon which execution may issue. *Id.*

■ Wife's points of error relative to the PDL awards, therefore, are not cognizable in this appeal. *See, e.g., Butler v. Butler,* 562 S.W.2d 685, 687 (Mo.App.1977). Wife, however, is entitled to the monies by virtue of the PDL order, not on the basis of the decree of dissolution. Wife therefore has judgments against husband on which she is entitled to execute.

■ In her fourth point on cross-appeal, wife contends the court erred in failing to include in the Form 14 calculations husband's income received in the form of benefits from his dental practice; specifically, the use of automobiles provided by the dental practice and the use of a vacation condominium. The directions for completion of Form 14 require

only that "[s]ignificant employment-related benefits received by the parent *may* be counted as income." (Emphasis added). The court is not required to include benefits in its calculation of husband's income and it was not an abuse of its discretion to fail to do so in this case.

In her fifth point on cross-appeal, wife contends the court erred in failing to include certain sums in its division of marital property. Two items of property she alleges were improperly excluded were the income tax refund for 1989 and the sums expended from the escrow account for son's tuition, both of which related to the PDL order. As indicated in our discussion above, PDL awards are not the proper subject of this appeal.

■ Wife also wants the $13,878.79 in gambling losses incurred by husband included in the marital assets and distributed. Husband admitted to spending this amount, stating that it was for "entertainment." The gambling losses were reflected in his credit card statements.

The court may include assets, some of which have already been liquidated, as part of the marital estate and set apart those assets to the parties. *See Jensen,* 877 S.W.2d at 136. In the present case, however, the court held husband responsible for paying over $44,000.00 in credit card debts incurred after the parties separated. Gambling debts of $13,878.79 were included in that amount. The court did not abuse its discretion in excluding the gambling debts from the marital assets.

Wife next challenges the trial court's failure to include in the marital estate about $17,000.00 which husband took from a bank account. We have reviewed the record; and we find that in view of the distribution of marital assets and apportionment of debts, the court did not abuse its discretion in excluding that amount from the marital assets. Wife's fifth point is denied.

■ In her final point on cross-appeal, wife claims the trial court erred in limiting husband's payment of son's tuition at the private school to the 1994–1995 school year.

The evidence before the court was that the parties' son was diagnosed as learning disabled and attention deficit disordered. Since June 1990, he had attended an expensive, private school which specialized in the education of children with similar disabilities. The school reevaluated him towards the end of each academic year and made recommendations as to placement for the coming year. At the time of trial, a school representative testified that it was recommended that son attend the school in 1994–1995. Wife herself testified that the son would be in the transition program for the 1994–1995 school year and after that year would attend a traditional school. Based on this evidence, the trial court did not abuse its discretion in limiting husband's obligation for tuition to the 1994–1995 school year. Wife's point is denied.

The judgment of the trial court is affirmed.[1]

CRAHAN, P.J., and DOWD, J., concur.

---

1. Wife's motion to strike husband's points relied on for failure to comply with Rule 84.04(d) is overruled.