**Ronald E. WRIGHT, Appellant,**

v.

**Bonnie Sue WRIGHT, Respondent.**

No. 22044.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 6, 1998.

Scott B. Stinson, Mountain Grove, for Appellant.

Brad D. Eidson, Houston, for Respondent.

PARRISH, Judge.

Ronald E. Wright (father) appeals the modification of a dissolution of marriage judgment that increased the amount of child support he was required to pay. This court affirms.[1]

■ This case is reviewed pursuant to Rule 73.01. The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *In re Marriage of Lawry*, 883 S.W.2d 84, 86 (Mo. App.1994). This court views the evidence in the light most favorable to the judgment. *Id.* at 86–87.

Father's marriage to Bonnie Sue Wright (mother) was dissolved June 4, 1991. The parties had two minor children. Father was ordered to pay child support to mother in the amount of $175 per month. Father lived in Missouri for about 10 years before the dissolution of his marriage. The Form 14 used to calculate the presumed child support at the dissolution of marriage trial listed his monthly gross income as $500.

·Both parties submitted Form 14 worksheets at the modification hearing. Mother's Form 14 calculated presumed child support of $770.31. Father's calculated presumed child support of $422.

■ The trial court accepted mother's calculation of presumed child support. It concluded, however, that father should be allowed a reduction from the presumed child support in the amount of $50 per month "to compensate for the cost and burden of providing transportation" in exercising visitation rights with the children. It declared that the presumed child support amount was "unjust and inappropriate with respect to the cost of transportation for the exercise of visitation privileges."[2] The amount of child support father was required to pay was increased to $720.31 per month.

The Form 14 worksheet the trial court adopted attributed $995.20 monthly gross income to mother and $2,536.27 monthly gross income to father. Father's first point on appeal asserts this was error "as there was no evidence that he was unemployed or underemployed, in light of uncontroverted evidence which showed that father actually worked 40 hours per week as a farm hand and self-employed carpenter earning gross wages of $1,250.00, had done this type of work exclusively for over 15 years, never having earned more than this amount, father had no other job skills and there was no proof that additional work or wages was available to . . . father."

Father's parents own a farm in Kentucky consisting of 150 to 200 acres. Father lives on the farm. He looks after approximately

1. Mother filed a motion in this court requesting attorney fees on the basis that father's appeal was frivolous. The motion is denied.

2. *Woolridge v. Woolridge*, 915 S.W.2d 372 (Mo. App.1996), suggests that although all that is required for a trial court to deviate from the presumed child support amount is a finding that the amount is unjust or inappropriate, "to properly frame the factual and legal issues for appeal so as to avoid needless reversals and remands, . . . it [should] consider including in its findings why it found the amount to be unjust or inappropriate. In making such a finding the trial court would only be articulating for the record what it is already required to do mentally by Rule 88.01." *Id.* at 382.

40 head of cattle and does other work there. At the time of the trial, he and his present wife lived in an old house on the farm.[3] He was not required to pay rent or utilities. Father testified that the reasonable rental value of the farmhouse, together with utilities his parents paid, was $750 per month. He stated he received this in return for his farm work. He contended his part-time earnings as a carpenter were $500 per month. The gross monthly income father claimed was the sum of these amounts, $1,250.

Father told the trial court that his farm work did not prevent him from being employed off the farm; that he was able to find work when he was not doing farm work. He testified that he did carpentry work; that he could earn $10 an hour as a carpenter.

The monthly gross income the trial court attributed to father was $2,536.27. It consisted of $1,732 wages and $804.27 "passive income." The wages were based on father's testimony that he could earn $10 per hour as a carpenter. They were calculated as follows:

| | |
|---|---|
| Hourly wages | $10.00 |
| Hours per work week | ×40 |
| | |
| Weekly wages | $400.00 |
| Weeks per month | ×4.33 |
| | |
| Monthly wages | $1,732.00 |

Father's 1995 federal income tax return reported $4,771.44 interest income, $1,238.55 dividend income, and $3,641.22 net rental income. Those amounts total $9,651.21, an average of $804.27 per month. The sum of $804.27 and $1,732.00 is $2,536.27, the amount of monthly gross income the trial court attributed to father. Point I contends the trial court erred in including wages father could earn from full-time employment as a carpenter as part of his monthly gross income.

■ As explained in *Holmes v. Holmes*, 878 S.W.2d 906 (Mo.App.1994):

In order to prevent a spouse from escaping responsibilities to support minor children, a court may, in proper circum-

stances, impute an income to that spouse according to an amount he or she could earn by using his or her best efforts to gain employment suitable to his or her capabilities. *Jensen v. Jensen*, 877 S.W.2d 131, 136 (Mo.App.1994); *In re Marriage of Garrison*, 846 S.W.2d 771, 775–76 (Mo. App.1993); *Hogrebe [v. Hogrebe]*, 727 S.W.2d [193] at 195 [ (Mo.App.1987) ]. Generally, a court can impute a higher income to a spouse if the evidence indicates he or she has the capacity to earn more. *Luker v. Luker*, 861 S.W.2d 195, 199 (Mo.App.1993).

*Id.* at 909.

Father had an obligation to provide for his children's support. "A spouse may not escape responsibility to his or her family by deliberately limiting his or her work to reduce income. In order to avoid such a situation, a court may, *in proper circumstances*, impute an income to a spouse according to what that spouse could earn by use of his or her best efforts to gain employment suitable to that spouse's capabilities." *Jensen v. Jensen*, 877 S.W.2d at 136 (citations omitted).

■ The trial court concluded that father elected to forego employment at a level that would better benefit his obligations to his children; that this detracted from his responsibility to them. That determination was supported by substantial evidence. It was not contrary to the weight of the evidence nor was it an erroneous declaration or application of law. Point I has no merit.

Point II is directed to the "passive income" reported on father's 1995 federal income tax return that the trial court considered in modifying child support. Father asserts the trial court should have found that the passive income was not available to him; that it was income he managed and possessed for his father. He contends the trial court abused its discretion in not declaring the presumed child support unjust and inappropriate.

■ Father's federal income tax returns for 1992, 1993, 1994 and 1995 were admitted in evidence. Comparable dividend income, interest income and rental income appear on

---

**3.** Father testified that he was building a new 3,000 square foot residence.

each return. The trial court heard father's testimony that he was a "caretaker" for his parents of property that produced this income. It found otherwise.

The trial judge was fact-finder. He could believe or disbelieve any testimony adduced. *Waddell v. Director of Revenue,* 856 S.W.2d 94, 95 (Mo.App.1993). He could believe all, part or none of the testimony of any witness. *Scism v. Scism,* 844 S.W.2d 506, 508 (Mo. App.1992). Point II is denied. The judgment is affirmed.

PREWITT, P.J., and CROW, J., concur.