**Helen DAVIS, Respondent,**

v.

**Gary DAVIS, Appellant.**

**No. ED 80677.**

Missouri Court of Appeals,
Eastern District,
Division Two.

April 1, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 27, 2003.

Application for Transfer Denied
July 1, 2003.

Arthur H. Nissenbaum, Clayton, MO, Benicia Baker–Livorsi, St. Charles, MO, for appellant.

Susan K. Roach, Law Offices of Susan K. Roach, Chesterfield, MO, for respondent.

GARY M. GAERTNER, SR. Judge.

Appellant, Gary Davis ("husband") appeals from the decree of dissolution of his marriage to respondent, Helen Davis ("wife"). We affirm in part and reverse and remand in part.[1]

Husband and wife were married on January 1, 1995. No children were born from the marriage, but husband and wife both had children from previous marriages. The parties were separated on or about May 13, 2000, and wife petitioned for divorce on June 2, 2000. The trial was held on June 6, 2001 and on August 17, 2001. The trial court entered its decree of dissolution on October 12, 2001. Husband filed a "Motion for New Trial/To Set Aside the Judgment or, in the Alternative, Amend the Judgment," which the trial court denied.

The decree dissolved the marriage of husband and wife and divided their property and debt.

We will affirm the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron* 536 S.W.2d 30, 32 (Mo.banc 1976). We presume the trial court's division of marital property to be correct; and the party challenging the division of property has the burden to overcome this presumption. *Tate v. Tate*, 920 S.W.2d 98, 103 (Mo.App. E.D.1996). We view the evidence and reasonable inferences therefrom in the light most favorable to the verdict and disregard contradictory evidence.

---

1. Wife's motion to dismiss the appeal that was taken with the case is hereby denied.

*Schwartzkopf v. Schwartzkopf,* 9 S.W.3d 17, 20 (Mo.App. E.D.1999).

Husband's first point on appeal argues the trial court erred in valuing the marital home at $312,000. Husband argues the trial court erred because there was not sufficient evidence to support the valuation of the home because the home required substantial repairs.

■■■ Owners of real estate are competent to testify to the reasonable market value of their real estate. *In Re Marriage of Kovach,* 873 S.W.2d 604, 608 (Mo.App. E.D.1993). However, the trial court is not bound to accept the owner's estimate of the real estate. *Id.* at 609. If there is contradictory testimony, we give deference to the trial judge, who is in a position to assess the credibility of the witnesses. *Id.*

■■■ . Wife testified the fair market value of the home was $312,000. Husband testified the fair market value was approximately $260,000, but the home required extensive repairs. Husband argues the trial court abused its discretion in valuing the home at $312,000 because the trial court did not factor in the repairs the home required. Because wife's testimony and husband's testimony as to the value of the home was contradictory, we give deference to the trial judge. The trial court did not abuse its discretion in valuing the marital home at $312,000 because wife testified the fair market value was $312,000. Point denied.

Husband's second point on appeal argues the trial court erred in assessing the value of a time-share at $14,395. Husband argues the trial court erred because the parties stipulated on the record that the time-share had a value of $8,700 and that husband would pay wife $4,350 for her portion of the time-share. The following discussion concerning the time-share took place at trial:

[Wife's Counsel]: And you also have as marital property Polo Towers time-share; is that correct?

[Wife]: Yes.

[Wife's Counsel]: And do you know the value of that property or not?

[Wife]: No, I don't know the value.

[Wife's Counsel]: Okay. And do you want that property sold, or do you want your husband to buy out your interest?

[Wife]: He can buy out my interest.

[Wife's Counsel]: And have you and he discussed the fact that your interest agreed upon would be $4,350?

[Husband's Counsel]: I'm going to object to that, Your Honor, as to any agreement, because I think the agreements were gone when we started the trial.

[Trial court]: Agreement as to the disposition or agreement as to the valuation of the asset?

[Husband's Counsel]: Okay.

[Trial Court]: Which are you—Do you— Do you agree as to the valuation?

[Wife's Counsel]: I thought there was an agreement as to the distribution, but if there—if there is not, Your Honor, I would withdraw the question.

Husband's counsel, wife's counsel and the trial court then briefly discussed whether the parties did or did not stipulate as to the value of the time-share. The trial court allowed husband's counsel to discuss first with husband, then with wife's counsel off the record the status of any stipulation. After these discussions, the following transpired at trial:

[Trial court]: Okay. Did you—Did you all want to stipulate to any of this, or are we just trying all the issues?

[Husband's Counsel]: Your Honor, we will stipulate with regard to the Polo Towers, as suggested in here.

[Trial Court]: Okay. Great. Let's move on, please.

If parties enter into stipulations of fact, the stipulations are controlling and conclusive, and courts are required to enforce them. *Buckner v. Buckner*, 912 S.W.2d 65, 70 (Mo.App. W.D.1995). However, to be enforceable the stipulations must be clear as to content and purpose. *Id.* If the parties agree upon an item's value and wish to stipulate as to that value, the stipulation should clearly indicate the agreed-upon value. *Id.* "Stipulations save time and streamline the trial process only when the parties put forth the minor effort needed to make them understandable." *Id.*

In this case, the stipulations are far from clear as to content and purpose. Husband argues the parties stipulated on the record the time-share had a value of $8,700 and that wife would be paid $4,350 for her portion of the value. However, the parties never clearly indicated an agreed-upon value for the time-share. At trial, wife's counsel asked wife if she and husband had agreed that husband would pay wife $4,350 for her interest in the time-share. Husband's counsel objected at this time that the "agreements were gone" when the trial started. Wife never answered the question. Husband's counsel, after discussing the issue with husband and wife's counsel, stated "we will stipulate with regard to the Polo Towers, as suggested in here." This was the only evidence concerning the possible stipulation concerning the parties time-share. Neither wife nor husband ever testified as to a stipulated value concerning the time-share. We cannot enforce any agreed-upon stipulation because the parties did not make the stipulation clear as to purpose and intent or clearly state the agreed-upon value. Point denied.

In his third point on appeal, husband argues the trial court erred in awarding wife the Edward D. Jones/Putnam Advantage account ("Jones account") and the American Express mutual funds as separate property. The Jones account had an approximate value of $30,984 and the American Express mutual funds had an approximate value of $25,061. Wife received approximately $604 every month in child support from her previous husband. Prior to the marriage wife set up a separate checking account, in her name only, where she deposited the child support money. She would then transfer approximately $400 a month from that checking account into the Jones account or into the American Express mutual funds. Wife established the accounts for the costs of her children's education. Wife informed husband prior to the marriage of her plans to save for her children's education, and that she would continue to invest the money for the children's education during the marriage. Wife testified that husband agreed to this plan. Wife was awarded the Jones account and the American Express mutual funds as separate property.

In Missouri, any property acquired after the marriage and prior to legal separation or dissolution is presumed marital property. Section 452.330.3;[2] *Brady v. Brady*, 39 S.W.3d 557, 561 (Mo.App. E.D.2001). "The presumption of marital property is overcome by a showing that the property was acquired by a method listed in [452.330.2]." Section 452.330.3. Marital property is defined as all property acquired during the marriage except:

(1) Property acquired by gift, bequest, devise or descent;

---

**2.** All further statutory references are to RSMo 2000 unless otherwise indicated.

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in the value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions. Section 452.330.2.

However, this is not an exclusive list of the exceptions to the presumption of marital property. *Silcox v. Silcox*, 6 S.W.3d 899, 903 (Mo.banc 1999). In addition to the exceptions listed in 452.330.2, public school teacher's retirement benefits and social security benefits are nonmarital property. *Id.* at 902; section 169.572.

Missouri follows the "source of funds rule." *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 824 (Mo.banc 1984); Section 452.330.2(5). Accordingly, the character of property is determined by the source of funds used to finance the purchase. *Hoffmann* 676 S.W.2d at 824.

In a case concerning the division of property, the Western District held that a judgment for back child support from a previous husband is not marital property. *Elliott v. Elliott*, 621 S.W.2d 305, 308 (Mo. App. W.D.1981). In *Elliott*, Mr. Elliott argued the trial court erred in its distribution of property because it did not consider a judgment for back child support that Mrs. Elliott had against her previous husband. *Id.* The court in Elliott affirmed, holding "such a judgment is not an asset of the custodial parent to be considered at any point in the calculation of that parent's total assets in the dissolution of a later marriage." *Id.*

Further, we note that providing for the needs of the children is the purpose of child support. *Linford v. State, Dept. of Social Services*, 987 S.W.2d 507, 511 (Mo. App. E.D.1999).

In this case, wife received approximately $604 per month in child support from her previous husband. Wife then invested approximately $400 a month for the education of her children. Wife invested the money for the benefit of her children, the accounts were in wife's name only, and wife kept the money segregated from the marital funds at all time. Wife established the accounts prior to the marriage, she informed husband how she invested the child support payments and she continued investing the child support payments during the marriage. Wife testified that husband agreed to wife investing the child support payments in this manner. Though child support payments received from a previous spouse are not an express exception in section 452.330, this list is not an exclusive list of exceptions. *See Silcox* 6 S.W.3d at 903. Wife's investing of the child support payments to provide for the children's education conforms to the purpose of child support. Furthermore, we agree with *Elliott* that child support payments from a previous spouse are "not an asset of the custodial parent to be considered at any point in the calculation of that parent's assets in the dissolution of a later marriage." *See Elliott* 621 S.W.2d at 308. Therefore, we find the trial court did not err because the child support payments wife received from her previous husband were nonmarital funds. Point denied.

In his fourth point on appeal, husband argues the trial court erred in awarding wife various items as her separate proper-

ty. The items consist of savings bonds titled in wife's children's names, wife's Boeing Voluntary Investment Plan ("VIP"), wife's bank account, the real estate in Wildwood, Missouri, an American Express IRA and an American Express Annuity Account. We will first address the savings bonds titled in wife's children's names, then the VIP, wife's bank account and the real estate together, and then we will address the American Express IRA and the American Express Annuity Account together.

█ Husband argues the trial court erred in awarding wife, as her separate property, savings bonds titled in wife's children's names only that she contributed to during the marriage. During the marriage, wife had $50.00 deducted from her paycheck every week, which she invested in savings bonds for her children's education. The savings bonds are titled in wife's children's names only and are payable on death to wife.

In his brief, husband argues the savings bonds are actually titled in wife's name. The evidence does not support this argument. At trial, wife testified the savings bonds are titled in her children's names. Husband did not dispute wife's testimony and he did not introduce any evidence that the savings bonds were actually titled in wife's name. Further, husband neither argued nor introduced any evidence showing that wife defrauded the marital estate by investing in the savings bonds in her children's names. Husband, as the party challenging the division of property, did not overcome the presumption that the trial court's division of property is correct. *See Tate v. Tate,* 920 S.W.2d at 103. Therefore, because the savings bonds are titled in wife's children's names, the savings bonds are the property of wife's children and are not marital property subject to division.

█ We will next address the VIP, wife's bank account and the real estate in Wildwood, Missouri. Wife had $143.69 deducted from her paycheck every week, which she invested in her VIP. The VIP had an approximate value of $25,075 prior to the marriage and an approximate value of $38,839 at the time of dissolution. However, wife withdrew approximately $58,623.86 from the VIP prior to the dissolution. Wife used approximately $50,000 of the money she withdrew from the VIP for a down payment on the real estate in Wildwood, Missouri. Husband signed a waiver of marital interest for the real estate to allow wife to get a loan, but husband did not waive his interests in the funds used to purchase the real estate. Wife deposited the rest of the money into her bank account. The trial court awarded wife the VIP, her bank account and the real estate in Wildwood as separate property.

Wife argues the trial court did not err because the trial court properly considered husband's marital misconduct in its division of property, pursuant to section 452.330.1(4). However, wife did not plead marital misconduct in her petition for dissolution and there was not substantial evidence introduced at trial concerning husband's marital misconduct. Furthermore, section 452.330.1 states the trial court shall consider factors such as the conduct of the parties during the marriage in its division of marital property, not in its classification of marital property.

The money wife invested in her VIP during the marriage is marital property because it was property acquired during the marriage. Section 452.330.3. Because wife used marital funds to finance the purchase of her VIP, the VIP is marital property. *See Hoffmann* 676 S.W.2d at 824. Furthermore, wife acknowledged during the trial that part of the VIP was marital

property. Therefore, the trial court erred in classifying wife's VIP as wife's separate property.

The trial court further erred in regards to any marital contribution to wife's bank accounts from the money wife withdrew from the VIP because the money in the VIP was marital property. As the trial court awarded wife the entire VIP and the bank account with money withdrawn from the VIP as her separate property, it appears the trial court determined the money wife used for the down payment on the real estate was separate property as well, without consideration of the marital waiver. On remand, the trial court shall determine what parts of the VIP and the bank account are marital. Furthermore, the trial court shall determine the effect of the marital waiver on the real estate, and if applicable, what part of the real estate is marital.

We now address the American Express IRA and the American Express Annuity Account. Husband argues the trial court erred in awarding wife the entire value of the American Express IRA valued at $55,335 and the American Express Annuity Account valued at $16,401 as her separate property. Wife set up the IRA and the annuity account prior to her marriage to husband and she did not contribute to either account during the marriage, though both the IRA and the annuity account increased in value during the course of the marriage because of either interest or dividends. The interest or dividends a spouse earns during a marriage on separate property is marital property. *Welch v. Welch,* 821 S.W.2d 560, 561 (Mo.App. E.D.1991). The trial court's decree must be remanded for a determination of the marital part of the American Express IRA and the American Express Annuity Account due to the increases from dividends or interest.

As to point four, we affirm as to the savings bonds titled in wife's children's names, and we reverse and remand as to wife's VIP, wife's bank account, the real estate in Wildwood, Missouri and the American Express IRA and American Express Annuity Account. The trial court shall determine the marital portion of each item and make the appropriate division.

Husband's fifth point on appeal argues the trial court erred in awarding wife one-half of the 11,250 shares of Alberici Corporate stock purchased during the course of the marriage. Husband argues the trial court erred because wife was awarded shares husband received as a result of stock splits from shares he purchased prior to the marriage, and therefore the shares were husband's separate property. We disagree.

Wife introduced an exhibit that detailed the acquisition of: 1) 300 shares of class A in 1995 for $20,012; 2) 200 shares of class A in 1997 for $16,488; 3) 1,650 shares of class A in 1981 for $21,450; 4) 1,500 shares of class B in 1995 for no cost; 5) 1,000 shares of class B in 1997 for no cost; and 6) 8,250 shares of class B in 1995 for no cost.

The trial court awarded wife 5,625 shares, or one-half of 11,250 shares the court determined were purchased during the marriage. Husband was awarded 2,625 shares, which was one-half interest in the 11,250 shares, minus 3,000 because the court determined husband sold 3,000 shares without wife's consent.

New shares issued to separate shares as a result of a stock split retain their separate character as an exchange. *Drikow v. Drikow,* 803 S.W.2d 122, 127 (Mo.App. E.D.1990). However, if the shares were acquired as part of a stock dividend, the dividend portion would be

marital property as income. *Id.;* Section 452.330.4.

The exhibit wife introduced at trial showed that 11,250 shares of Alberici stock were acquired during the marriage, and that husband had acquired 1,650 prior to the marriage. Husband testified he actually only purchased 3,000 shares during the marriage. When asked about the exhibit, husband attempted to explain how certain shares were "related," and that certain shares were not purchased. Husband never explained how the shares were acquired and did not introduce any evidence at trial that shares were acquired during the marriage as a result of a stock split. The evidence at trial supports the trial court's award to wife of one-half "of the 11,250 shares Alberici Corporate Stock purchased during the course of the marriage or 5,625 shares." Point denied.

In his sixth point on appeal, husband argues the trial court erred in the distribution of husband's retirement plan. The trial court used the following formula to divide husband's retirement plan: one-half of $584,172 multiplied by husband's years in the plan divided by 6.8 years of marriage. Husband's attorney was then instructed to draft a Qualified Domestic Relations Order (QDRO) to facilitate the distribution.

 Husband argues the trial court erred in its valuation of the retirement plan because the value assigned by the court was not as of the date of the trial. Property should be valued reasonably close to the date the division of property is to be effective. *Morgan v. Ackerman,* 964 S.W.2d 865, 868 (Mo.App. E.D.1998). We find that evidence did show that the retirement account was properly valued.

 Husband further argues the trial court used an inappropriate formula to divide the retirement plan. In distrib-

uting retirement plans, trial courts apply a flexible approach on a case by case basis, and have broad discretion to protect the rights and best interests of the parties. *Lynch v. Lynch,* 665 S.W.2d 20, 23 (Mo. App. E.D.1983); *Kuchta v. Kuchta,* 636 S.W.2d 663, 665 (Mo.banc 1982). We find the trial court did not abuse its discretion in dividing husband's retirement plan. Point denied.

In his seventh point on appeal, husband argues the trial court erred in several ways in regard to its classification and division of the automobiles. Husband was awarded five cars he purchased prior to the marriage as his separate property, and wife was awarded one car as her separate property. The trial court then determined the marital automobiles consisted of the following:

 1976 Vega; value of $2,500
 1989 Taurus; value of $4,100
 1989 Chrysler van; value of $1,500
 1989 utility trailer; value of $3,000
 1979 pickup; value of $2,250
 1960 Corvette; value of $22,600
 1987 Honda Accord; value of $1,600
 1994 Chevy pickup; value of $10,000
 1983 Mercedes; value of $5,000
 <u>1972 Corvette; value of $15,000.</u>
 Total Value $67,550.

Husband was awarded all of the marital automobiles, and was instructed to pay wife one-half of the total value, or $33,775.

 Husband first argues the trial court erred in classifying the 1994 Chevy pickup as marital property because husband purchased it prior to the marriage, and there was no evidence to support the trial court's determination the pickup was marital. We disagree. Wife listed the 1994 Chevy pickup as marital property in her "Amended Proposed Distribution of Property and Debt," and wife testified the automobiles listed in section B of her proposed distribution were purchased during

the marriage. Therefore, we find there was sufficient evidence to support the trial court's decision.

■ Husband next argues the trial court erred in ordering husband to pay half of the equity in the 1976 Vega because the automobile was titled in both husband's name and wife's son's name. There is, however, no dispute that the 1976 Vega was marital property, as both husband and wife listed this automobile as marital property in their statements of property. We find the trial court did not abuse its discretion in dividing the value of the 1976 Vega.

■ Husband next argues the trial court erred in its valuation of the automobiles because there was no evidence to support the valuations entered by the trial court. A trial court cannot enter a valuation of property that is not supported by any evidence at trial. *McGowan v. McGowan*, 43 S.W.3d 857, 866 (Mo.App. E.D.2001). The valuations entered by the trial court are consistent with the valuations listed on wife's "Proposed Distribution of Property and Debt." We find the evidence did support the valuations entered by the trial court. Point denied.

■ Husband's eighth point on appeal argues the trial court erred in awarding wife one-half of husband's employment bonuses from 2000 and 2001. The trial court determined husband's 2000 and 2001 bonuses totaled $61,762, and awarded wife one-half of that total, $30,881. Husband argues the trial court erred in determining his bonuses totaled $61,762 because the trial court considered money husband received as "station allowances" for expense reimbursements as part of his bonus total.

Husband's employer assigned husband to a work project in Brazil in early 2000, which he worked for approximately fifteen months. While in Brazil, husband received a station allowance from his em-

ployer to pay for his expenses. Husband admits he also received the following: a bonus of $18,200 in 2000, a bonus of $13,300, a service award of $7,500 and a safety bonus of $1,000 all in 2001. Husband also received $16,740 in 2000 and $5,022 in 2001 for "travel," according to husband's payroll records. The trial court added these figures to reach a total "bonus" of $61,762 for 2000 and 2001.

Husband argues the trial court included money he received as a station allowance to reimburse husband for expenses he incurred while in Brazil, and that such reimbursements should not be considered as income subject to division. Husband relies on *McGowan v. McGowan*, 43 S.W.3d at 862. In *McGowan*, this court held that expense reimbursements are not income, but rather "compensation for loss due to employment-related expenses." *Id.* Such expense reimbursements should not be included as gross income on the Missouri Civil Procedure Form 14 to calculate the presumed child support amount. *Id.*

In this case, however, unlike in *McGowan*, the trial court included money husband received as a bonus, not as an expense reimbursement as income. Husband fails to show the trial court divided money husband received as expense reimbursements. The evidence supports the trial court's division of husband's employment bonuses from 2000 and 2001.

Husband next argues the money received for "travel" was for travel reimbursement expenses, not a travel bonus. Husband did not introduce any evidence that the "travel" expenses were for reimbursement, not as a bonus. We find the trial court's decision supported by the evidence at trial.

■ Husband further argues the trial court erred in its award of husband's bonuses because the trial court's award did

not reflect any tax consequences borne by husband in earning the funds. Husband cites no cases or law on point, and we find husband's argument unpersuasive.

■ Husband finally argues the trial court erred because husband and wife used the money from the bonuses to pay off marital debts and there were no assets from the bonuses left to distribute. However, "[t]he court may include assets, some of which have already been liquidated, as part of the marital estate and set apart those assets to the parties." *Tate*, 920 S.W.2d at 104.

Because husband received the bonuses during the marriage, and prior to the decree of dissolution the bonuses are presumed marital property. Section 452.330.3; *See Brady* 39 S.W.3d at 561. The trial court did not abuse its discretion in its classification or division of husband's bonuses. Point denied.

■ Husband's ninth point on appeal argues the trial court erred in valuing the household goods husband purchased in 2000 and 2001 at $15,000 and the household goods husband purchased while working in Brazil at $28,976. The trial court awarded wife one-half of the value of the household goods husband purchased in 2000 and 2001, and ordered husband to make a cash payment of $7,500 to wife for her interest in the goods. The trial court also awarded wife one-half of the value of the goods husband purchased while in Brazil, and ordered husband to make a cash payment of $14,488 to wife for her interest in the goods.

Husband argues there was not sufficient evidence to support the trial court's valuation of the household goods husband purchased in 2000 and 2001. A trial court cannot enter a valuation of property that is not supported by any evidence at trial. *McGowan* 43 S.W.3d at 866. Husband testified he purchased numerous items for his home in 2000 and 2001, including a washer and dryer, a DVD karaoke machine, patio furniture, sofas, a satellite dish, a bedroom set, a computer, stereo equipment and other items. The value the trial court entered is consistent with the value assigned on wife's statement of property. We find no error in the trial court's valuation of the household goods.

■ We also find the evidence at trial supports the trial court's valuation of the goods husband purchased in Brazil. Wife testified to specific amounts of money husband expended while in Brazil. Wife testified husband made numerous cash withdrawals, wrote checks and made credit card purchases while in Brazil that she did not authorize.

Husband further argues that many of the goods purchased while in Brazil were expenses for food and other living expenses, and he should not be required to reimburse wife for these expenses.

■ If a trial court finds that a party squandered marital assets, the court may order reimbursement. *Lawrence v. Lawrence*, 938 S.W.2d 333, 338 (Mo.App. W.D. 1997).

■ Husband argues the trial court did not make the necessary finding that he squandered assets and therefore he should not be required to reimburse wife. However, in this case, the trial court did not order husband to reimburse wife, but rather to pay wife one-half of the value of the purchased household goods. Under the source of funds rule, goods purchased with marital funds are marital property. *Hoffmann* 676 S.W.2d at 824. The trial court did not err in ordering husband to pay wife one-half of the value of the household goods husband purchased in Brazil. Point denied.

The trial court judgment is (1) reversed and remanded as to the trial court's classification and division of wife's VIP, wife's bank account, the real estate in Wildwood, Missouri, the American Express IRA and the American Express Annuity Account and (2) affirmed in all other respects.

PAUL J. SIMON, P.J. and
KATHIANNE KNAUP CRANE, J.,
concur.