**In re the MARRIAGE OF Kimberly WOOD and James Wood.**

**Kimberly Wood, Petitioner–Respondent,**

v.

**James Wood, Respondent–Appellant.**

**No. SD 28767.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 27, 2008.

Joseph Aubuchon of Union, MO, for appellant.

Justin E. Head of Union, MO, for respondent.

DON E. BURRELL, Presiding Judge.

James Wood ("Husband") appeals the judgment dissolving his marriage to Kimberly Wood ("Wife"). Husband raises ten points of alleged error. Two of Husband's points concern the classification and distribution of Wife's pension plan and will be addressed together. Husband's other points will be addressed in the order presented. Finding no merit in any of Husband's contentions, we affirm the judgment.

### I. Facts

There were two children born of the marriage who remained minors (ages thirteen and nine) at the time of the dissolution. Both Husband and Wife sought joint legal custody, but each claimed the children should reside primarily with them.[1]

---

1. Wife filed the initial petition for dissolution of marriage. Husband timely filed an answer which admitted the marriage was irretrievably broken but included a counter-petition seeking "primary physical custody" of the children.

Neither party's pleadings made any allegation of child abuse or neglect. The judgment ultimately issued by the trial court granted the parties joint legal custody and awarded Wife "primary and sole physical custody of the children, subject to [Husband]'s rights of temporary custody and visitation."[2] The judgment also ordered Husband to pay Wife $360.00 per month in child support. The judgment did not include any factual findings detailing the relevant factors the trial court considered in making its custody determination and neither party requested any written findings of fact. The trial court calculated its own Form 14 in determining the presumed amount of child support. Additional facts necessary to the disposition of the case are included below as we address Husband's specific allegations of error.

## II. Standard of Review

 In general, the standard of review in a dissolution of marriage case is the same as that used for any other court-tried case; the trial court's judgment will be affirmed unless it is not supported by substantial evidence, is against the weight of the evidence, or misapplies or erroneously declares the law. *Murphy v. Car-*

*ron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Other standards of review that apply to specific issues or findings will be addressed within our discussion of the points to which they apply. When reviewing a dissolution decree, we view the evidence in the light most favorable to the decision, *In re Marriage of Taylor,* 244 S.W.3d 804, 808 (Mo.App. S.D.2008), and the party challenging the decree "has the burden of demonstrating error." *Elrod v. Elrod,* 192 S.W.3d 738, 740 (Mo.App. S.D.2006). "We defer to the trial court's credibility determinations" and it is free to believe or disbelieve all, part, or none of any witness' testimony. *In re Marriage of Dolence,* 231 S.W.3d 331, 333–34 (Mo.App. S.D. 2007). Finally, because no request for written findings on controverted facts was made on the record prior to the introduction of evidence, the trial court is considered to have made findings consistent with the result reached. Rule 73.01(c).[3]

## III. Analysis

### Issue 1: Child Custody— Guardian ad litem

 For his first point, Husband alleges the trial court erred in not *sua sponte*

---

**2.** Although the parties use the same terminology in their pleadings and it has not been raised as a point of error in this case, we note that use of the phrase "primary physical custody" is not to be encouraged. Physical custody, like legal custody, is either "joint" or "sole" depending on the amount of time the child is to spend with each parent. *Malawey v. Malawey,* 137 S.W.3d 518, 524 (Mo.App. E.D.2004). If the contact schedule has the child spending "significant" (though not necessarily equal) periods of time with each parent, this constitutes an award of joint physical custody and should be so designated in the judgment. If more limited periods of time are awarded to one parent, those periods should be referred to as "visitation" and the decree should state that the other parent is being awarded "sole" physical custody subject to the other parent's periods of visitation. *See Id.* at 524–25. Such designations are

important because "[they] determine[ ] the standard for future modification of the physical custody arrangement." *Id.* at 524. Periods of "visitation" can be modified upon a simple showing that to do so would be in the child's best interests. *See* Section 452.400.2, RSMo Cum.Supp.2006. The modification of a joint custody arrangement must also be in the best interests of the child, but no such modification can take place unless it is first demonstrated that a change in the circumstances of the child or custodian has occurred. *See* Section 452.410; *Malawey* at 524.

**3.** Unless otherwise noted, all references to rules are to Missouri Rules of Civil Procedure (2008) and all references to statutes are to RSMo (2000).

appointing a guardian ad litem. Under section 452.423.2, RSMo Cum.Supp.2005, a trial court must appoint a guardian ad litem when child abuse or neglect is alleged. "For purposes of section 452.423, child 'abuse' is defined as 'any physical injury, sexual abuse, or emotional abuse inflicted on a child ... by those responsible for his care, custody and control, except ... discipline including spanking, administered in a reasonable manner.'" *Sewell–Davis v. Franklin,* 174 S.W.3d 58, 66 (Mo.App. W.D.2005) (quoting *Rombach v. Rombach,* 867 S.W.2d 500, 504 (Mo. banc 1993)). "Neglect" occurs when those responsible for the proper care, control, and custody of a child fail to provide "the proper or necessary support, education as required by law, nutrition or medical, surgical, or any other care necessary for [the child's] well-being." *Rombach,* 867 S.W.2d at 504.

As previously noted, none of the parties' pleadings contained any such allegations. In fact, Husband's counsel toward the end of the trial explicitly stated: "I know that a guardian is mandatory when abuse or neglect is alleged, and we don't have those facts. So I don't feel that a guardian is mandatory ..." In spite of this statement at trial, and the absence of any allegations of abuse or neglect in the parties' pleadings, Husband now argues certain evidence presented at trial constituted an allegation of child abuse or neglect such that the trial court should have *sua sponte* appointed a guardian ad litem.[4] As support for this claim, Husband relies on trial testimony indicating that: 1) on rare occasions, Wife swore at the minor children; 2) on one occasion, Wife brought the children to her office at night and left them there alone while she went to a bar; 3) Wife had some kind of rat or mice poison in her attic; 4) Wife's house may have been messy on at least one occasion; and 5) Wife would leave the children home alone, knowing that a sex offender lived next door.

While several of these behaviors would be unlikely to appear in a manual of suggested parenting techniques, the trial court did not abuse its discretion by failing to *sua sponte* appoint a guardian ad litem when this testimony was adduced. The type of conduct Husband now asserts as abuse or neglect is less serious than conduct appearing in other cases where abuse or neglect were held not to be shown. *See Id.* at 502 (husband swore at wife in front of children, called his daughter a "fat little pig," poured a glass of water on one of his sons when he was throwing a temper tantrum, did not take the children to the hospital as quickly as wife thought appropriate after injuries had occurred, allowed a child to play soccer when the child had poison ivy, pushed, grabbed and spoke harshly to the children in an attempt to get them in his vehicle, and aimed his vehicle at one of the children to indicate he would run the child over if he didn't get in the car); *Holmes v. Holmes,* 878 S.W.2d 906, 911–12 (Mo.App. E.D.1994) (when son attempted to intervene in a fight between husband and wife, husband pushed son down the stairs; daughter was hit in the head by a swinging door when husband was chasing her; husband hit daughter with a belt while daughter was visiting him); *Dent v. Dent,* 965 S.W.2d 230, 235–36 (Mo.App.

4. In *Rombach,* our Supreme Court held that the mandatory appointment of a guardian under section 452.423 is only triggered when allegations of child abuse or neglect are included in a pleading. 867 S.W.2d at 503. However, the Court also noted that if sufficient evidence of abuse or neglect is produced at trial, then the trial court should *sua sponte* "order the pleadings amended to conform to the evidence and appoint a guardian ad litem." *Id.* at 504.

W.D.1998) (wife removed children from pre-school, failed to take daughter to a dental appointment, consumed alcohol in the home, failed to take her prescribed anti-depressant medications, had poor housekeeping habits, frequented bars, failed to pay her utility bills—resulting in her gas being turned off—and improperly disciplined the children and failed to keep them clean). Husband's first point is denied.

### Issue Two: Child Custody—Best Interests Determination

Husband next argues the trial court erred in failing to consider all evidence relating to the best interests of the children. Section 452.375.2 requires the trial court to "determine custody in accordance with the best interests of the child." In making that determination, the trial court is directed to a non-exclusive list of factors that must be considered. Section 452.375.2.

Husband argues the trial court failed to consider evidence that Wife lives next door to a registered sex offender. At trial, Wife testified she lived one house away from a convicted sex offender and that she would occasionally leave the children home alone without supervision. Although Husband claims the trial court arbitrarily disregarded this evidence, he cites to nothing in the record or judgment that would support his claim. Our review of the transcript and judgment also discloses nothing to indicate the trial court failed to consider certain evidence. As earlier noted, Husband did not request findings of fact pursuant to Rule 73.01(c) and the trial court made no specific finding as to how Wife living next door to a convicted sex offender affected its determination of the appropriate custody arrangements for the children. "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c); *Shepard v. Shepard*, 47 S.W.3d 412, 417–18 (Mo.App. S.D.2001). Husband's second point is denied.

### Issues Three & Five: Property Division—Wife's Retirement Account

■ For his third point, Husband claims the trial court wrongfully failed to make a determination as to whether Wife's retirement account was marital or separate property. His fifth point argues that the trial court erred in finding that Husband and Wife were married on September 24, 1998, because the evidence showed the couple was actually married ten years earlier (September 24, 1988). Husband claims the marriage date error was significant because it hindered a correct calculation of when marital assets began to accrue. The only specific asset Husband claims was so affected, however, was Wife's retirement account. Specifically, Husband states the incorrect date "would throw into serious error a correct calculation of when the marital portion of [Wife's] pension began to accrue, had the trial court made a determination of whether the pension was marital or separate."

Section 452.330 sets forth a two-step process for trial courts to follow when dividing property in a dissolution case. The trial court is to first determine and set aside to each spouse their own non-marital property, then justly divide the remaining marital property and debts. Section 452.330; *In re Marriage of Michel*, 142 S.W.3d 912, 920 (Mo.App. S.D.2004). As a part of this process, the trial court is required to make specific findings of fact as to what assets are subject to division as marital property and what assets are considered non-marital and thereby not subject to division. *Gilstrap v. Gilstrap*, 238

S.W.3d 196, 198 (Mo.App. W.D.2007); *Michel,* 142 S.W.3d at 921. "Such an identification of property is the necessary antecedent of a subsequent just division of marital property." *Michel,* 142 S.W.3d at 921. However, an erroneous classification of property is not automatically prejudicial; the erroneous classification must materially affect the merits of the action. *Id.* The date of the marriage is often significant because contributions a party makes to his or her pension plan before marriage are the contributor's own separate property and not marital property subject to division by the court. *Hubbs v. Hubbs,* 870 S.W.2d 901, 906 (Mo.App. S.D.1994).

The judgment at issue does not identify *any* property as marital or non-marital. Instead, it simply incorporates exhibits that list various assets and indicate which party is to receive them. Exhibit A lists Wife's retirement account among the assets awarded to her.

It is arguable that Husband's claim that the trial court failed to classify Wife's retirement account as either marital or non-marital property has not been properly preserved for our review because the matter should have been raised with the trial court by timely filing a motion for an amended judgment. "[A]llegations of error relating to the form or language of the judgment, *including the failure to make statutorily required findings,* must be raised in a motion to amend the judgment in order to be preserved for appellate review." Rule 78.07(c) (emphasis added).

In the case at bar, Husband's only after-trial motion was entitled "Motion For A New Trial." A motion to amend a judgment and a motion for a new trial request separate and distinct forms of relief; they are "not functionally equivalent." *Southard v. Southard,* 239 S.W.3d 172, 175 (Mo. App. E.D.2007). However, because the title of a motion is not in itself dispositive, we examine the contents of the motion to determine the actual nature of the motion brought. *Gipson v. Fox,* 248 S.W.3d 641, 644 (Mo.App. E.D.2008); *In re Marriage of Echessa,* 74 S.W.3d 802, 804 (Mo.App. S.D.2002). While Husband's "Motion for a New Trial" does complain that the judgment lacks certain factual findings, the only relief prayed for therein is that the trial court vacate the entire judgment and order a new trial. Husband's motion, therefore, was in all respects a motion for a new trial and cannot be construed as a motion to amend the judgment for purposes of satisfying the requirements of Rule 78.07(c).[5]

However, we do not need to reach the issue of whether Husband's failure to file a motion to amend the judgment was fatal to his appeal on these points because Husband has failed to cite to any evidence in the record that would indicate when Wife's retirement plan was created or when any contributions were made to it. Under Rule 84.04(e), the argument portion of an appellant's brief " 'should show how the principles of law and the facts of the case interact.' " *Selberg v. Selberg,* 201 S.W.3d 513, 516 (Mo.App. W.D.2006) (quoting *Carroll v. AAA Bail Bonds,* 6 S.W.3d 215, 218 (Mo.App. S.D.1999)). To review this claim of error would require us to scour the record in an attempt to find facts favorable

---

5. Although a remand to the trial court is not necessary under the facts of this particular case, a trial court's failure to designate property as either separate or marital will often require the case to be remanded with instructions to make such a designation. Requiring the parties to first raise the issue with the trial court in a motion to amend the judgment allows the problem to be fixed without the delay and expense inherent in prosecuting an appeal which will ultimately order the trial court to do what the parties should have already requested of it.

to Husband's argument. This task would necessarily transform our role from neutral reviewer to advocate-a role we cannot assume. *McCullough v. McCullough*, 195 S.W.3d 440, 443 (Mo.App. S.D.2006) (citing *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978)).

A fact Husband's brief did cite was that the total value of Wife's retirement account was approximately $2,500.00. For the most part, the judgment awards property to one party or the other without indicating any value for the item awarded. In fact, only three assets divided by the trial court (all awarded to Husband) were given a dollar value: 1) four tracts of real estate ($400,000); a one-half interest in a business ($60,000); and cash ($13,000). Items of property awarded to Husband but not given a dollar value included vehicles, tractors, other farming equipment, ATVs, trailers, horses, and bank accounts. The total amount of the three valued items alone was $473,000. Even if the total value of Wife's retirement account should have been designated as marital property, that $2,500 amounts to just 0.529% of the property awarded to Husband even if all of the other unvalued assets he received were worth nothing. This constitutes an amount not significant enough to have a material affect on the overall distribution of property. *See Sonderman v. Sonderman*, 46 S.W.3d 115, 117 (Mo.App. E.D. 2001). Points three and five are dismissed.

### Issue Four: Property Division—Alleged Change in Circumstances of the Parties Between Trial & Judgment

■ Husband claims the trial court erred by failing to consider what he alleges were material changes to the circumstances of the parties that occurred while the case was under the trial court's consideration.

■ Under section 452.330.1(1), the trial court is required to consider the economic circumstances of each spouse at the time its division of property is made. However, the proper date for the valuation of property is the date of trial. *Taylor v. Taylor*, 736 S.W.2d 388, 391 (Mo. banc 1987). As dissolution judgments are rarely, if ever, entered on the date of trial, any material delays should be addressed by holding an additional hearing. "Valuation of property should be reasonably proximate to the date the division is to be effective. If the effective date of the distribution is not reasonably proximate to the date of valuation, the court should hold another hearing to establish a valuation as close to the effective date of the division as possible." *In re Marriage of Gustin*, 861 S.W.2d 639, 644 (Mo.App. W.D.1993). However, a delay between the date of trial and the date of judgment is not, in itself, grounds for reversal; a party must show that he or she was prejudiced as a result of the delay. *Galloway v. Galloway*, 122 S.W.3d 705, 709 (Mo.App. E.D.2003). Although Husband claims the judgment should be reversed because the trial court's valuations were "stale" by the time its judgment was entered, he cites nothing to support his conclusory statement that the parties' circumstances had changed and that the property had changed in value. In addition, the nature of the property divided is not of the type that is clearly volatile in value. *See McCallum v. McCallum*, 128 S.W.3d 62, 67 (Mo.App. E.D.2003). As Husband has failed to show any prejudice, his claim of error is without merit and point four is denied. *Galloway*, 122 S.W.3d at 709.

### Issue Six: Property Division—Punitive Distribution of Assets

■ Husband alleges the trial court imposed a punitive scheme of distribution of marital assets because of alleged marital

misconduct on Husband's part. To support his claim of error, Husband asserts he was only awarded 22% of the marital assets. Once again, Husband fails to provide us with any citation to the record or mathematical calculation that would show how he arrived at this figure. Husband claims Wife was awarded assets with a net value of $250,000 while he was awarded assets with a net value of only $71,500. The dissolution judgment reveals that Wife was awarded a $250,000 money judgment against Husband in addition to the previously mentioned list of assets set forth in Exhibit A. Husband fails to cite to any portion of the record supporting his contention that he was only awarded assets with a net value of $71,500.

"It is not the duty of an appellate court to seine the record in order to discover, if possible, error by the trial court; it is the duty of an appellant to distinctly point out the alleged errors and where they can be found in the record." *Eagleburger v. Emerson Elec. Co.*, 794 S.W.2d 210, 240 (Mo. App. S.D.1990) (citing *Schoenhals v. Pahler*, 272 S.W.2d 228, 230[6] (Mo.1954)); *Patterson v. Patterson*, 207 S.W.3d 179, 188 (Mo.App. S.D.2006). Point six is dismissed.

### Issue Seven: Division of Property— Valuation of Share of Business

In his seventh point of error, Husband claims the trial court's valuation of a business Husband owned with his father was not supported by "credible" evidence.

While a trial court cannot enter a valuation of marital property that is not supported by evidence at trial, the trial court does enjoy broad discretion in valuing property when conflicting evidence is offered. *Dunnagan v. Dunnagan*, 239 S.W.3d 181, 189 (Mo.App. S.D.2007); *Dowell v. Dowell*, 203 S.W.3d 271, 276–77 (Mo.App. W.D.2006). "The trial court is

entitled to believe or disbelieve the testimony of either party concerning the valuation of property in a dissolution proceeding[.]" *Wofford v. Wofford*, 991 S.W.2d 194, 200 (Mo.App. W.D.1999). Owners are competent to testify as to the value of property owned. *Id.*

Neither party presented any expert testimony as to the value of Uptown Auto Sales, the business at issue. At trial, Wife testified that she believed the business was worth $120,000. Husband presented conflicting testimony as to its value, but at one point he also used the $120,000 as his estimate of its value. The trial court was free to believe this testimony and acted within its discretion when it set aside to Husband a one-half interest in "Uptown Motors" and assigned that one-half interest a value of $60,000. Point seven is denied.

### Issue Eight: Child Support Calculation

Husband alleges the trial court erred by using Wife's net income instead of her gross income when calculating the presumed amount of child support.

When determining an award of child support, rule 88.01 and section 452.340 require the trial court to follow the two-step procedure set forth in *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App. W.D. 1996). *Bottorff*, 221 S.W.3d at 487. In the first step, "the trial court determines the presumed child support amount by using Civil Procedure Form No. 14." *Id.* Form 14's use is mandatory in any proceeding where child support is calculated. *Id.* In the second step, the trial court, after considering all relevant factors, must determine whether the evidence is sufficient to rebut the presumed amount as either unjust or inappropriate. *Id.*

The trial court has some discretion in calculating Form 14 income. *Hen-*

best v. Henbest, 164 S.W.3d 198, 206 (Mo. App. S.D.2005). In determining a party's income, the trial court should look to past and present income and may also consider a party's anticipated earning capacity. *Pearcy v. Pearcy,* 193 S.W.3d 844, 847 (Mo. App. S.D.2006).

Although it appears from the transcript that both parties filed their own proposed Form 14 calculations, Husband has not included either one in his record on appeal. While Husband claims the trial court used Wife's net income in its Form 14 calculation, Husband fails to cite to any portion of the record that would actually support that contention. At trial, Wife testified on direct examination that she had a "monthly income" of $2,462. On cross-examination, she testified, while reviewing her W–2 income statements, that she had an "annual income" of $32,768.36 in 2006, $30,908.89 in 2005, and $30,757.68 in 2004. These W–2 statements were then received into evidence without objection.[6] No one ever asked Wife whether the amounts she was testifying to were gross or net income figures and no objection concerning any failure to do so was ever lodged with the trial court. Therefore, the evidence at trial established that Wife's "monthly income" over time was between $2,462 and $2,730 per month. It was within the trial court's discretion to select an income figure from within that range. *Kahn v. Kahn,* 839 S.W.2d 327, 336 (Mo.App. E.D.1992). Viewed in the light most favorable to the result reached, the trial court's finding that Wife's gross income was $2,500 per month was supported by sufficient evidence. Point eight is denied.

### Issue Nine: No Written Findings on Best Interests Determination

■ As his ninth point of alleged error, Husband claims the trial court failed to include written findings detailing its best interests findings as required by section 452.375.6.

Under section 452.375.2, trial courts must base their child custody determinations on the best interests of the child. Section 452.375.2 sets forth a non-exclusive list of eight factors a court must consider in making its best interests determination. If the parties are unable to agree on a custodial arrangement or the trial court chooses to reject the parties' agreed-upon custodial arrangements, the trial court must include a written finding in its judgment detailing which relevant factors under section 452.375.2 it found controlling in determining the appropriate custodial arrangements for the child(ren). Section 452.375.6.

In the case at bar, both parties submitted separate parenting plans. Because the parties were unable to agree on a proposed custodial arrangement, the trial court was required to include in its judgment the written findings required by section 452.375.6. Although these findings are statutorily required, any alleged error for failing to make them must be included in a motion to amend the judgment in order to preserve the error for appellate review. Rule 78.07(c); *In re Marriage of Bottorff,* 221 S.W.3d at 485. As previously discussed, Husband's motion for new trial did not constitute such a motion. Point nine is dismissed.

### Issue Ten: Property Division—Certain Debts and Assets No Longer in Existence

■ For his final point, Husband argues the trial court erred by allocating and awarding both debts and assets that were

---

**6.** We cannot determine whether these exhibits would have provided any support for Husband's argument as they were not included in the legal file or deposited with the Court.

no longer in existence at the time the judgment was entered. Specifically, Husband claims the trial court erred by: 1) ordering Wife to pay a debt that Husband had already paid a portion of; and 2) reducing his share of the marital property by double counting several assets.

 The trial court has broad discretion in dividing property and debts. *Vanderpool v. Vanderpool*, 250 S.W.3d 791, 795 (Mo.App. S.D.2008); *Travis v. Travis*, 163 S.W.3d 43, 48–9 (Mo.App. W.D.2005). We presume the trial court's division is correct and the party seeking to alter it has the burden of demonstrating that the trial court abused its discretion. *Vanderpool*, 250 S.W.3d at 795. In reviewing the trial court's decision, we defer to its credibility determinations. *Id.*

The judgment ordered Wife to pay a $2,000 "marital debt" owed to St. John's Mercy Medical and/or Children's Hospital. Husband testified there were marital debts owed to both St. John's and Children's Hospital for treatment provided to their oldest son for pneumonia. Husband said he did not know the amount of the St. John's debt, but that he had paid off the debt owed to Children's Hospital when he paid them "fourteen hundred and something dollars." Wife testified that she had a $2,000 medical debt relating to a knee surgery she had undergone. Husband argues this evidence proves that he had already paid off "fourteen hundred and something dollars" of the $2,000 medical debt Wife was ordered to pay. The judgment, however, does not specify what kind of medical services led to the $2,000 marital debt assigned to Wife.

The judgment awarded Husband several assets the trial court labeled as "[a]ssets accounted for in distribution though sold or whereabouts unknown." Those assets consisted of $13,000 in cash that had been in a safe located inside the marital home;

thirty head of cattle that had been sold after the parties separated; a boat and trailer; a four wheeler; and a tractor and trailer. Additionally, Husband was awarded a Ford Tractor and a bank account at the Bank of Sullivan.

Husband states the $13,000 in cash was proceeds from the sale of the tractor and trailer. As to the boat and trailer, Husband claims he had already sold the boat and had placed the sale proceeds in the Bank of Sullivan account. Husband said the listed boat trailer actually belonged to his father, not to him. Finally, Husband asserts that the proceeds from the sale of the thirty head of cattle were used to purchase the Ford tractor. Because of this testimony Husband alleges the trial court's judgment was not supported by "credible" evidence and unfairly prejudiced him by reducing his share of the marital assets. As credibility is a matter reserved exclusively to the trial court, we interpret Husband's point as an allegation that the trial court's judgment is not supported by substantial evidence.

Husband did testify at trial that the $13,000 in cash came from the sale of a tractor and trailer. Portions of Husband's deposition testimony were also introduced at trial. In that deposition, Husband initially denied the very existence of the $13,000, then later stated that the money had come from the sale of horses. Husband also did not list the $13,000 on the statement of property he had prepared or list therein any proceeds from the sale of any cattle. The new Ford tractor and the boat and trailer were also not listed on Husband's statement of property. In fact, Husband failed to list numerous other pieces of farm equipment on his property statement. Despite Wife's discovery requests, Husband also failed to turn over any information whatsoever regarding the purchase or sale of any tractors or cattle.

It was within the trial court's province to believe or disbelieve all, part, or none of Husband's testimony. *In re Marriage of Taylor*, 244 S.W.3d at 808. Based on Husband's pre-trial failure to fully disclose his assets and his inconsistent sworn testimony, the reasonable inference is that the trial court simply did not believe Husband's testimony about the disputed assets and debts. Alternatively, the trial court could have found that these actions indicated that Husband had either squandered or attempted to secrete marital assets in anticipation of the divorce. In such situations, "a trial court may hold a party liable for the value of marital assets that no longer exist[ ]" by awarding those assets to him or her. *Kester v. Kester*, 108 S.W.3d 213, 222 (Mo.App. S.D.2003). Point ten is denied and the judgment of the trial court is affirmed.

PARRISH and RAHMEYER, JJ., concur.