In re MARRIAGE OF Gayle HAYES, and Frederick Jay Hayes,

Gayle Hayes, Petitioner–Appellant,

v.

Frederick Jay Hayes, Respondent–Respondent.

No. SD 29208.

Missouri Court of Appeals, Southern District, Division Two.

July 28, 2009.

Daniel S. Cornacchione, Sr., Caruthersville, MO, for Appellant.

W. Edward Reeves, Caruthersville, MO, for Respondent.

DON BURRELL, Presiding Judge.

Gayle Hayes ("Wife") appeals the judgment dissolving her marriage to Frederick Hayes ("Husband"). Wife argues the trial court erred in: 1) determining the amount of equity in the marital home; 2) classifying Wife's certificate of deposit as marital property; and 3) imputing Wife's income at a level not supported by the evidence. Finding no merit in any of Wife's claims, we affirm.

## I.   Facts and Procedural Background

We view the evidence and all reasonable inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence. *Tarneja v. Tarneja*, 164 S.W.3d 555, 558 (Mo.App. S.D.2005). The parties were married on August 17, 2003. Husband and Wife had one child together before they were married. Wife also had two children from a previous marriage. The parties separated on approximately November 21, 2007. That same day, Wife withdrew the balance of a certificate of deposit account (the "CD") in the amount of $20,207.36.

Eight days later, Wife filed her petition for dissolution of marriage. Husband promptly filed a motion for a temporary injunction that would prevent Wife from disposing of "all marital assets." The court held a hearing on Husband's motion the very next day and entered a docket entry that stated it was granting "Respondent's Motion for Order injoining [sic] parties from disposing of marital assets."

The trial of this matter took place on May 15, 2008, and the court entered its decree of dissolution one month later. Additional facts relevant to the disposition of this appeal will be set forth in the context of our analysis of Wife's specific allegations of error.

## II.   Standard of Review

Our standard of review in a dissolution of marriage case is the same as that used for any court-tried case: we must affirm the trial court's decree unless it is not supported by substantial evidence, is against the weight of the evidence, erroneously declares the law, or misapplies the

law. *In re Wood,* 262 S.W.3d 267, 270 (Mo.App. S.D.2008); Rule 84.13(d).[1] "[T]he party challenging the decree 'has the burden of demonstrating error.'" *Id.* (quoting *Elrod v. Elrod,* 192 S.W.3d 738, 740 (Mo.App. S.D.2006)). "'We defer to the trial court's credibility determinations' and it is free to believe or disbelieve all, part, or none of any witness' testimony." *Id.* (quoting *In re Dolence,* 231 S.W.3d 331, 333–34 (Mo.App. S.D.2007)); Rule 73.01(c).

### III. Discussion

*Point I: Equity in the Marital Home*

■ Wife's first point improperly combines two related but different claims of error: 1) that there was *no substantial evidence* to support the trial court's finding of $12,000 of equity in the marital home; and 2) that the finding of $12,000 in equity was *against the weight of the evidence.* (emphasis added). Wife argues the weight of the evidence supported a finding of $18,000 of equity and that the trial court erred because "[a]t no place in the transcript, the legal file, the exhibits, or the record is [$12,000] contemplated or mentioned."

■ "Substantial evidence" simply means "competent evidence from which the trial court could reasonably decide the case[,]" *Bauer v. Bauer,* 38 S.W.3d 449, 455 (Mo.App. W.D.2001), and "[w]e will reverse a judgment as against the weight of the evidence 'only with caution and a firm belief that the judgment is wrong.'" *Ludwig v. Ludwig,* 126 S.W.3d 466, 474 (Mo.App. W.D.2004) (quoting *King v. King,* 66 S.W.3d 28, 32 (Mo.App. W.D. 2001)). A trial court has broad discretion in valuing marital property, but it cannot enter a valuation that is not supported by any evidence. *Tarneja,* 164 S.W.3d at 559. "Owners of real estate are competent to testify to the reasonable market value of their real estate," but the court is not bound to accept the owner's estimate. *Davis v. Davis,* 107 S.W.3d 425, 430 (Mo. App. E.D.2003). "If there is contradictory testimony, we give deference to the trial judge, who is in a position to assess the credibility of the witnesses." *Id.* "'When the trial court's valuation of property is within the range of conflicting evidence of value offered at trial, the court acts within its discretion to resolve conflicts in evidence.'" *Tarneja,* 164 S.W.3d at 559 (quoting *Taylor v. Taylor,* 25 S.W.3d 634, 644 (Mo.App. W.D.2000)).

At trial, Wife testified that the marital home had appraised for $69,000 and that she thought its current market value was close to $70,000. Based upon her valuation, Wife estimated there was between $14,000 and $17,000 of equity in the home.[2] Husband testified that the home was insured for $60,000, but that he thought "with the market right now, [he] would do good to get [$50,000] out of it." Husband testified that he still owed $42,000 on the refinanced mortgage and had never seen the appraisal referred to by Wife.

Each party's testimony (as owners of the property at issue) constituted competent evidence of the home's value. Based on that testimony, the home had a fair market value of between $50,000 and $70,000 and the debt against it was $42,000. This evidence established a range of equity in the marital home between $8,000[3] and $28,000.[4] The trial

---

**1.** All references to rules are to Missouri Court Rules (2009).

**2.** Although Wife testified that the debt on the home had been $50,000 at some point in time, she did not testify as to what current

amount of debt she was using to calculate her estimate of the parties' equity in the home.

**3.** $50,000–$42,000 = $8,000.

**4.** $70,000–$42,000 = $28,000.

court found there was conflicting evidence concerning the equity in the marital home and determined the proper amount to be $12,000. The trial court was not required to believe Wife's equity valuation, and its finding was within the range supported by the conflicting evidence presented at trial. *Tarneja*, 164 S.W.3d at 559. As a result, the trial court did not err in finding that the parties had $12,000 of equity in the marital home. Point I is denied.

*Point II: Certificate of Deposit*

■ Wife's second point contends the trial court erred in finding the CD to be marital property and thereby erred in awarding Husband half its value.[5] Wife's argument is that because the CD was funded for the benefit of her children by child support payments from a previous spouse, it should have been considered her non-marital property under the source of funds rule.[6]

■ The classification of property as marital or non-marital is a question of law we review *de novo*. *In re Fisher*, 258 S.W.3d 852, 857 (Mo.App. S.D.2008). "In Missouri, any property acquired after the marriage and prior to legal separation or dissolution is presumed marital property." *Davis*, 107 S.W.3d at 431; section 452.330.3.[7] This presumption, however, can be overcome. *Silcox v. Silcox*, 6 S.W.3d 899, 903 (Mo. banc 1999); *see* section 452.330.2. The trial court's classification of property is presumed correct, and the party challenging that classification has the burden of overcoming the presumption by clear and convincing evidence. *Fisher*, 258 S.W.3d at 857; *Davis*, 107 S.W.3d at 429. Property is classified by determining the source of funds used to

finance its purchase. *Davis*, 107 S.W.3d at 432.

Wife testified that she started contributing to the CD when she was awarded full custody of her two children from her previous marriage. She stated she received $146 per week in child support payments that were deposited directly into her separate savings account. Wife testified she would then take the money out of her savings account and put it into the CD. Wife did not know what the value of the CD was on the date of the parties' marriage. Husband testified that Wife did not have the CD before they were married and was spending the child support payments she had been receiving. Husband's testimony was that the CD was funded by family savings the parties had accumulated during their marriage.

Most significantly, near the end of her direct examination, Wife testified as follows:

Q. Okay.... The main issue here is finances, correct?

A. Right.

Q. Okay. There was a $20,000 CD?

A. Yes.

Q. Okay. Some of that's before the marriage. Approximately—

we'll say for the sake of argument, $10,000 in marital property—

A. Right.

Q. —I mean, in—$20,000 in marital property, 10,000 to you, 10,000 to [Husband]?

A. Right.

The evidence also showed that Wife withdrew the balance of the CD ($20,-

---

5. Appellant's Point II violates Rule 84.04(d)(5) by including a list of twelve cases; the maximum allowed is four.

6. For a good demonstration of a mathematical application of the source of funds rule, see

*Altergott v. Altergott*, 259 S.W.3d 608, 619 (Mo.App. S.D.2008).

7. Unless otherwise indicated, all references to statutes are to RSMo 2000.

207.36) on the day the parties separated. Wife testified Husband wanted to split the balance of the CD between them and she gave him a check for $5,000. After issuing the check, Wife's family told her not to give Husband any of the money from the CD and Wife cancelled payment on the check. She stated she cancelled payment because the money in the CD did not belong to Husband "[b]ecause it was child support money." Approximately two weeks after Wife withdrew the balance of the CD, Husband filed the motion for temporary injunction that resulted in the trial court's ordering the parties not to dispose of any marital assets.

According to Wife, by the time the temporary injunction was granted she had spent all but $3,931.36 of the money taken from the CD. Wife testified the money was spent to: 1) give $2000 to Husband; 2) pay her lawyer; 3) pay the first and last month's rent on an apartment; 4) purchase furniture for the apartment; 5) buy a four-wheeler for the children; 6) pay approximately $2,200 in truck repairs for her boyfriend; 7) purchase a computer; and 8) buy groceries and "stuff for the children." Despite the court order, Wife stated she purchased a van about a week after the injunction was granted, depleting the funds from the CD to a nominal value. When asked why she spent the money after being court ordered not to do so, Wife replied: "Because I had to go to work, take care of my kids to [sic] school."[8]

The court issued the following findings of fact in regard to the CD:

> The Court further finds that testimony was adduced relative to a savings Certificate of Deposit in the amount of $20,207.36. The Court further finds that the money in said Certificate of Deposit

is directly traceable to child support received by [Wife] on two minor children born by [sic] a previous relationship. [Wife] testified and [Husband] failed to rebut that the child support money relative to the two children of a prior marriage was direct deposited into a checking account in the sole name of [Wife]. There was further uncontroverted evidence that [Wife] periodically rolled the child support payments from her checking account into a Certificate of Deposit held in the sole name of the minor children. However, there was evidence that the parties were using their respective incomes for living expenses and had agreed to set aside the child support payments as savings for the parties. The Court finds said Certificate of Deposit to be marital property.

In support of her argument that the CD should have been classified as her nonmarital property, Wife cites *Davis*. In *Davis*, wife also had children from a prior marriage. 107 S.W.3d at 431. Wife informed her husband that she planned to save for her children's education and would continue to do so during their marriage. *Id.* Wife testified that her new husband had agreed to this plan. *Id.* Prior to the marriage, wife set up a separate checking account, in her name only, that was used to receive her monthly child support payments. *Id.* From this checking account, wife transferred approximately two-thirds of the monthly child support payments into two investment accounts she had established, in her name only, for the purpose of funding her children's future education expenses. *Id.* Wife kept the money segregated from the parties' marital funds at all times. *Id.* In determining the two investment accounts to

---

**8.** Wife did not have a driver's license at this time and did not acquire a license until ap-

proximately one month before trial.

have been properly classified by the trial court as non-marital property, the court stated:

> Though child support payments received from a previous spouse are not an express exception in section 452.330, this list is not an exclusive list of exceptions. *See Silcox[,]* 6 S.W.3d at 903. Wife's investing of the child support payments to provide for the children's education conforms to the purpose of child support. Furthermore, we agree with *Elliott* that child support payments from a previous spouse are "not an asset of the custodial parent to be considered at any point in the calculation of that parent's assets in the dissolution of a later marriage." *See [Elliott v. Elliott,* 621 S.W.2d 305, 308 (Mo.App. W.D.1981) ].[9] ] Therefore, we find the trial court did not err because the child support payments wife received from her previous husband were nonmarital funds.

*Id.* at 432. We find *Davis* distinguishable for a number of reasons.

First, in *Davis,* the trial court's decision (presumed correct) was that the child support payments were non-marital property. Here, the trial court's decision (presumed correct) was that the CD was marital property, and Wife had the burden of overcoming that presumption. *Fisher,* 258 S.W.3d at 857; *Davis,* 107 S.W.3d at 429. Second, unlike in *Davis,* Wife's contention that the CD was funded for the benefit of the children was a contested matter. There was conflicting testimony regarding whether Wife started contributing to the CD before or after the marriage and whether the CD was for the benefit of the children or represented family savings. Third, ample evidence was presented that Wife did not actually spend the money for the benefit of her children. The evidence showed that within a matter of weeks, Wife spent the entire balance of the CD on everything from new furniture to repairing her boyfriend's truck. She even gave Husband $2,000 after previously canceling a $5,000 check she had written him "because it was child support money." The court found that the parties were using Wife's child support payments as savings and we defer to its credibility determinations. *Wood,* 262 S.W.3d at 270. Finally, when asked by her own attorney whether there was $20,000 in marital property in the CD, Wife responded in the affirmative. Wife cannot testify at trial that the CD was marital property then complain on appeal that the trial court erred in making such a finding. Point two is denied.

*Point III: Wife's Income*

■ Wife's third point states:

*The Court Erred* in imputing [Wife's] income to one Thousand, Eight Hundred Ninety–Seven Dollars ($1,897.00) per month for purposes of Form 14 Because said imputed income was not supported by the evidence, and the Court did not make the required findings as set forth in Comment H to Form 14 regarding Line 1, gross income, *In That* no admissible evidence was submitted to the Court to rebut [Wife's] testimony re-

---

9. We pause to emphasize that *Elliott* does not directly support this proposition. In *Elliott,* husband complained "that the court omitted from its division of property consideration of the value of a judgment in favor of [wife] against her previous husband for back child support." 621 S.W.2d at 308. In one sentence the court rejected this argument, stating: "Absent compelling authority to the contrary we hold that such a judgment is not an asset of the custodial parent to be considered at any point in the calculation of that parent's total assets in the dissolution of a later marriage." *Id.* We see an important distinction between a judgment in favor of a spouse for back child support and child support payments made to a spouse during the marriage. Our legislature has not set forth child support payments as an express exception in section 452.330.

garding her income or factors necessary to impute income.

Wife's complaint is misplaced. "The theory behind imputing income to a spouse/parent is directed toward preventing a spouse from escaping responsibilities to the family by deliberately or voluntarily reducing his or her income." *Buchholz v. Buchholz,* 166 S.W.3d 146, 152 (Mo.App. S.D.2005). Here, the court did not impute income to Wife. Instead, it found Wife's "income figures inconsistent with the evidence presented." There was conflicting testimony at trial about Wife's income from tips. It was up to the trial court to determine what, if anything, to believe about that testimony. *Wood,* 262 S.W.3d at 270. In doing so, the trial court was determining what wife's actual income was, not what her income could have been if she had not been voluntarily reducing it.

Moreover, Wife's specific point on appeal seems to be an abstract one. While it twice mentions Form 14, it does not actually challenge the court's child support award. Wife's third point is also denied, and the judgment is affirmed.

LYNCH, C.J., and RAHMEYER, J., Concur.